**John HODOH, a.k.a., John D. Hodoh, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 32371.**

United States District Court
N. D. Ohio, E. D.

Aug. 16, 1957.

4. United States v. Tieger, supra, 234 F.2d at page 591, footnote 7.

Thomas S. E. Brown, Akron, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., Cleveland, Ohio, for defendant.

WEICK, District Judge.

This is an action for refund of excise taxes on wagers, the occupation of wagering, and penalties thereon, claimed to have been illegally, erroneously and unlawfully assessed and collected under I. R.C.1939, § 3285 et seq., § 2707, 26 U. S.C.A. (I.R.C.1939), § 3285 et seq., § 2707.

Police officers of the City of Akron, acting under a search warrant issued by the Municipal Court of that city, searched plaintiff's residence on December 7, 1953 and found evidence tending to prove that he was engaged in the numbers business. The officers immediately called Internal Revenue agents who went to plaintiff's home where the search was being conducted.

The police officers found the following on the premises:

(a) A numbers slip

(b) $900 in $1 bills hidden in a crisper in plaintiff's ice box in the kitchen

(c) About $200 in change in a bag in a waste basket

(d) About $9,000 in cash in a safe in plaintiff's bedroom

(e) Money wrappers

(f) Papers littered about the dining room table

When the police arrived at plaintiff's residence and knocked on the front door, plaintiff came to the door, but did not open the door for several minutes, during

which time plaintiff went upstairs. When the police were admitted to the house, they heard the upstairs toilet as it was flushing.

The police remained in the house for nearly three hours during which time plaintiff's telephone, which had an unlisted number, rang repeatedly.

Lieutenant of Detectives Carroll Cutright answered the telephone in plaintiff's presence and thereby obtained the names and addresses of numbers solicitors who were calling to advise plaintiff of wagers which they had collected and desired to turn in. The plaintiff was taken by the officers to the residence of Lilly Frambrough, one of said solicitors, where numbers slips and money collected for plaintiff on wagers was seized and she was arrested. Another solicitor was also arrested.

The Akron police seized the money and other evidence at plaintiff's home. Plaintiff and the solicitors were charged in the Municipal Court of Akron with violation of the wagering laws of the city.

A jeopardy assessment was made for the 10% tax on wagering which, with penalty and interest, amounted to $8,-408.48, and a tax assessed on plaintiff's wagering occupation, which, with penalty and interest, amounted to $94.82.

A levy for the tax on wagering was filed with the Chief of Police of Akron who turned over to the Director of Internal Revenue in payment thereof $8,-408.48 of the funds which had been seized. The Chief of Police returned to plaintiff the balance of his funds pursuant to an order of the Municipal Court.

Plaintiff's automobile was also seized by the Revenue Agents for the occupational tax. Plaintiff paid said tax under protest and his automobile was then released.

He filed claims for refund of both taxes and upon denial of the claims filed this suit.

The claims for refund were sufficiently broad to embrace the causes of action set forth in the complaint.

Plaintiff claims that he was not engaged in the occupation of wagering and did not receive or collect any wagers and, therefore, owes nothing to the Government.

Upon trial in the Municipal Court plaintiff was acquitted of the charge of wagering. The solicitors plead guilty and were fined.

■ Plaintiff's acquittal in the Municipal Court of the charge of wagering is not determinative of the issues here. There was no identity of parties and, therefore, the doctrine of res judicata does not apply. Moreover, the burden of proof in the cases is different. In the Municipal Court the burden of proof was upon the prosecution to establish the charge of wagering beyond a reasonable doubt. In the present case the burden of proof is upon the taxpayer to establish his claim by a preponderance of the evidence.

Plaintiff testified on direct examination, by his own counsel, that he had been previously arrested on July 12, 1949 for possession of lottery slips and fined $10; that he was again arrested for possession of lottery slips and fined on October 26, 1949; that he was again arrested on the same charge on January 9, 1951 and sentenced to 10 days imprisonment in the Workhouse.

Plaintiff testified that he had been a messenger for his father who was engaged in the business. He testified that at no time since 1951 had he been engaged in the numbers business or in receiving or accepting wagers and denied that he was so engaged on the date of his arrest on December 7, 1953.

■ The overwhelming evidence, however, establishes the fact that, contrary to plaintiff's testimony, he was actually engaged in the numbers business at the time of his arrest on December 7, 1953.

The delay in opening the door for the officers, the flushing toilet, the numbers

slip, $900 in one dollar bills concealed in the ice box, $200 change in the waste basket, money wrappers, $9,000 in the upstairs safe, the incessant ringing of the unlisted telephone for about three hours, and the arrest of the numbers solicitors who called plaintiff's home on the telephone to report on their collections—all these facts are inconsistent with plaintiff's claim that he was not engaged in wagering.

The fact that plaintiff was gainfully employed by a rubber company during the period of time in question does not militate against the proposition that he was also engaged in the numbers business. His employment, after September 13, 1953, was for only six hours a day, and he had plenty of time to engage in his other occupation of running a numbers business.

The Court finds, therefore, that plaintiff was engaged in the numbers business and was liable for excise tax on his occupation of wagering and that said tax and the penalty and interest thereon was properly assessed and collected.

Plaintiff did not keep a daily record showing the gross amount of all wagers for which he was liable as required by law. 1939 I.R.C. § 3287, 26 U.S.C.A. (I.R. C.1939) § 3287. Nor did he keep any books or records in connection with the wagering business in which he was engaged.

The Internal Revenue agents were, therefore, compelled to estimate the wagers. In making the estimate, the agents received no co-operation from plaintiff. He claimed that he was not engaged in the wagering business, received no money for wagers and was, therefore, not liable for any tax. As before pointed out, the evidence indicates otherwise.

The Internal Revenue agents did the best they could to arrive at proper figures. They took statements from plaintiff's solicitors, talked with Akron police officers, and drew upon their own experience in similar cases. They estimated plaintiff's daily take during the period in question as $500 based upon $10 for each of an estimated 50 solicitors and they made allowances for Sundays and holidays.

It may be that the amounts so estimated by the agents are too large or too small. No one knows except the plaintiff and he will not tell. He kept no records from which correct figures could be obtained.

One thing is certain and that is that the plaintiff does owe some tax to the Government from the collection of wagers by him. The amount could only be estimated by the Internal Revenue agents because plaintiff did not keep the records required by law and furnished the agents with no information as to the nature and extent of his operations. Plaintiff offered no evidence in this Court from which a proper determination of the tax for which he was liable could be made.

■ An action for refund of taxes claimed to have been erroneously collected is in the nature of the common-law action for money had and received and is governed by equitable principles. Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Routzahn v. Brown, 6 Cir., 95 F.2d 766.

■ The burden of proof in the case is upon the taxpayer to prove not only that the determination of the tax was wrong, but to produce evidence from which another and proper determination could be made. Lewis v. Reynolds, supra; Roybark v. United States, 9 Cir., 218 F.2d 164; Lightsey v. Commissioner of Internal Revenue, 4 Cir., 63 F.2d 254; Decker v. Korth, 10 Cir., 219 F.2d 732. The determination of tax made by the Commissioner is presumptively correct. Mayes v. United States Trust Co., 6 Cir., 280 F. 25.

■ In other words, plaintiff must establish the proper amount of tax which he owes the Government. This he has not done. He has not sustained the burden of proof placed upon him by the law.

This memorandum is adopted as findings of fact and conclusions of law. Judgment may be entered in favor of defendant dismissing the complaint.