**Dennis HAMILTON, Plaintiff,**

v.

**UNITED STATES of America, Edward J. Fitzgerald, Jr., District Director of Internal Revenue for the District of Manhattan, Randolph W. Thrower, Commissioner of Internal Revenue of the United States of America, Defendants.**

**No. 69 Civ. 2727.**

United States District Court
S. D. New York.

Nov. 14, 1969.

Godfrey H. Murrain, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant the United States by Brian J. Gallagher, Asst. U. S. Atty., New York City.

MANSFIELD, District Judge.

In this action to enjoin the Government from levying, collecting or assessing excise taxes in the sum of $385,491.-71 upon wagers pursuant to 26 U.S.C. § 4401,[1] and for a judgment declaring

---

1. That section provides:

"§ 4401. *Imposition of tax*

"(a) *Wagers.*—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

"(b) *Amount of wager.*—In determining the amount of any wager for the

the assessments to be invalid, plaintiff seeks preliminary injunctive relief pursuant to Rule 65, F.R.C.P., restraining any attempt to collect the tax so assessed. For the reasons hereinafter stated, the motion is denied.

Plaintiff was arrested on May 21, 1965, and charged criminally pursuant to 26 U.S.C. § 7262[2] with failure to pay the excise tax on wagers received in violation of the federal wagering tax laws (26 U.S.C. § 4401) and failure to pay a special $50 occupational tax imposed on wagering in violation of 26 U.S.C. § 4411.[3] On April 5, 1968 the Government voluntarily dismissed the criminal complaint against Hamilton on the authority of the Supreme Court's decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1967), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1967).

On January 2, 1969, pursuant to 26 U.S.C. § 4401, the Government filed an assessment against plaintiff in the sum of $385,491.71 for unpaid excise taxes due on wagers allegedly handled during the period July 1, 1961 to May 21, 1965. The Government calculated the tax due on the basis of a projection. Plaintiff had not kept a daily record of the wagers as required by 26 U.S.C. § 4403.[4] The only available figures were taken from wagering records in the form of "policy slips" for the period May 19-21, 1965, which had been seized pursuant to search warrants issued by the United States Commissioner on May 21, 1965. The average of these three days was computed.[5] That average was multiplied by the number of days in which the Government calculated Hamilton wagered. This number of days was estimated by multiplying four (the number of years Hamilton "admitted" accepting wagers[5a]) by six (the number of days per week, Sundays and holidays excepted, that the Government assumed that Hamilton accepted wagers per week). This

purposes of this subchapter, all charges incident to the placing of such wager shall be included; except that if the taxpayer establishes, in accordance with regulations prescribed by the Secretary or his delegate, that an amount equal to the tax imposed by this subchapter has been collected as a separate charge from the person placing such wager, the amount so collected shall be excluded.

"(c) *Persons liable for tax.*—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him."

2. That section provides:
"Any person who does any act which makes him liable for special tax under subchapter B of chapter 35 without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000."

3. That section provides:
"There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."

4. That section provides:
"Each person liable for tax under this subchapter shall keep a daily record showing the gross amount of all wagers on which he is so liable * * *."

5. The slips upon which the average was computed were of two types. The slips representing the "three digit number" form of wager totalled $5,715.99, or $1,905.33 per day. The "single" action slips amounted to $1,077.40 for May 19 and 20. The slips were "fragmentary" for May 21 (Aff. of Mr. Gallagher, p. 3). The average was $538.70 for each of the two days. The total average of $2,443.03 was computed by adding the different types.

5a. Plaintiff also had been arrested and convicted for dealing in "policy slips" on four occasions, July 22, 1957, September 16, 1959, November 10, 1959 and May 21, 1965.

process resulted in a projected gross take of $2,883,955 from plaintiff's wagering activity, upon which there was assessed an excise tax of 10% pursuant to § 4401, resulting in $288,395.54, plus $97,095.71 interest, or a total assessment of $385,492.25. Pursuant to 26 U.S.C. § 6301,[6] the Internal Revenue Service served a notice of a federal lien in the sum of $382.122.13 [7] on plaintiff, and accompanied this with notice of levy [8] in the amount of $385,491.71, and seizure of the contents of a safety deposit box held by Hamilton.

■■ Plaintiff's argument that the procedure used to enforce the wagering tax, 21 U.S.C. § 4401, is unconstitutional must be rejected on both substantive and procedural grounds. In Marchetti v. United States, 390 U.S. 39, 61, 88 S.Ct. 697, 19 L.Ed.2d 889 (1967), the Supreme Court upheld the constitutionality of the tax on wagers, 26 U.S.C. § 4401. The Supreme Court has also upheld the summary proceedings used in this case to determine the assessment. So long as an adequate opportunity to contest the assessment exists, assessment by summary administrative proceedings, without notice or hearing, does not violate the due process clause. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Pizzarello v. United States, 285 F.Supp. 147, 152, reversed on other grounds, 408 F.2d 579 (2d Cir. 1968). In any event the request for declaratory relief must be denied on the authority of 28 U.S.C. § 2201, for lack

---

6. That section provides:

 "The Secretary or his delegate shall collect the taxes imposed by the internal revenue laws."

7. The Internal Revenue Service is empowered to do this by 26 U.S.C. § 6321, which provides:

 "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

8. The Internal Revenue Service has this power pursuant to 26 U.S.C. § 6331, which provides:

 "(a) *Authority of Secretary or delegate.*—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

 "(b) *Seizure and sale of property.*— The term 'levy' as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

 "(c) *Successive seizures.*—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary or his delegate may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid."

of jurisdiction. Accord: cf. Koin v. Coyle, 402 F.2d 468, 470 (7th Cir. 1968).

■ Turning to plaintiff's application for injunctive relief, we are faced with the strong policy against such relief expressed by Congress in 26 U.S.C. § 7421, which prohibits injunctive relief except in certain situations not applicable here, and in the Supreme Court's decision in a leading case on the subject, Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), holding that such relief is generally denied pursuant to § 7421 but may be granted in the rare case where a plaintiff is able to show (1) that "under no circumstances could the Government ultimately prevail," and (2) that "equity jurisdiction otherwise exists." As Chief Justice Warren noted, the purpose of these two requirements is to insure against interference with the Government's collection of taxes:

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the Nut Margarine, [Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422] case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax.' Id., 284 U.S. at 509, 52 S.Ct. at 263.

"We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act —protection of the collector from litigation pending a suit for refund." (370 U.S. at 7–8, 82 S.Ct. at 1129)

Relying upon the recent decision of the Second Circuit Court of Appeals in Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969), which was also a wagering tax case, plaintiff urges that the Government cannot "ultimately prevail" here because its "manner of calculation is grossly excessive and illegal on its face as a matter of law" and would have the effect of violating his Fifth Amendment right against self-incrimination by coercing him into waiving that right and disclosing his gambling activities in order to avoid imposition of a tax in excess of what he is obligated to pay. In addition, although plaintiff does not urge it as a ground in his moving papers or brief, his complaint (¶ 2) alleges on information and belief that the three days' "policy slips" used as the basis for the computation under attack were unlawfully seized in contravention of the Fourth Amendment.

The method used by the Government here to compute the assessment is substantially the same as that criticized by the Court of Appeals in Pizzarello, where the Government used a three-day average of policy wagers as the basis for calculating a gambler's gross wagering business over a five-year period. In the present case a three-day average was used to calculate gambling revenue for four years. Although we agree that the relatively small sample would not appear to the uninitiated to be necessarily representative of plaintiff's business over such a long period, we cannot conclude as a matter of law that such a projection is irrational, arbitrary, and incapable of being supported. For instance, experts in the business of gambling, given the period of time during

which plaintiff admittedly was engaged in accepting policy wagers, the area in which he operated, and gambling data independently collected by objective bodies, might testify to the reasonableness of the projection. Similar computations have been accepted by various courts. See United States v. Washington, 251 F.Supp. 359 (E.D.Va.1966) affd., 402 F.2d 3 (4th Cir. 1968); Pinder v. United States, 330 F.2d 119 (5th Cir. 1964); Ginsberg v. United States, 67–2 USTC ¶ 15,757 (C.D.Cal.1966), affd. per curiam, 408 F.2d 1016 (9th Cir. 1969); Mersel v. United States, 67–2 USTC ¶ 15,756 (S.D.Fla.1967); Hodoh v. United States, 153 F.Supp. 822 (E.D. Ohio 1957); O'Neill v. United States, 198 F.Supp. 367 (E.D.N.Y.1961); Shades Ridge Holding Co. T.C. Memo 1964–275, affd. per curiam sub nom. Fiorella v. Commissioner of Internal Revenue, 361 F.2d 326 (5th Cir. 1966); Isaac T. Mitchell, T.C. Memo 1968–137 (1968) (appeal pending). Resort to such methods of computation here became necessary only because plaintiff failed to maintain and furnish the daily records required to be kept by 26 U.S.C. § 4403 (see n. 4). Under such circumstances the propriety of calculating taxes from incomplete records has been recognized. See, e. g., Mendelsohn v. Commissioner of Internal Revenue, 305 F.2d 519 (7th Cir.), cert. denied, 371 U.S. 877, 83 S.Ct. 149, 9 L.Ed.2d 114 (1962); Harbin v. Commissioner of Internal Revenue, 40 T.C. 373 (1963).

Regardless of such computations we must recognize that the available evidence, including the three days' receipts and plaintiff's admission that he was in the business of accepting wagers on policy slips over the four-year period from July 1961 to May 21, 1965, indicates that a substantial amount of tax is due and owing. Plaintiff cannot, therefore, seriously contend that he does not owe taxes to the Government, or that the Government would not ultimately prevail to the extent of at least a substantial portion of the assessment. In this respect the present case is sig-

nificantly distinguishable from *Pizzarello* where Judge Moore, although criticizing the method of computation, found that the Government was precluded from collecting any of the taxes. assessed in that case because (1) there was a failure of proof that *Pizzarello* had accepted wagers over the five-year period alleged, and (2) the assessment depended upon illegally seized evidence, without which it could not possibly be supported.

Neither of the foregoing grounds for *Pizzarello* exist here. The record before us, unlike that in *Pizzarello*, reveals an independent evidentiary basis for the Government's determination that plaintiff was in the wagering business from July 1961 to May 1965. Furthermore, the policy slips used as the basis for the assessment were seized pursuant to three search warrants issued on May 21, 1965 by United States Commissioner Bishopp. Plaintiff has failed to offer a scintilla of evidence indicating that the warrants were invalid or that there was an absence of grounds sufficient to constitute probable cause for their issuance. Although we may infer that the warrants were issued in connection with an investigation into violations of the federal wagering tax laws, it is also possible that the Government was investigating violations of other statutes, including that prohibiting interstate gambling, 18 U.S.C. § 1952. Even if the investigation was limited to possible violations of the federal wagering tax laws, such an investigation was permitted in 1965 pursuant to the Supreme Court's decisions in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1952); and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), upholding convictions for violation of the federal wagering tax statutes. Since it was not until 1968 that the Supreme Court overruled these decisions in *Marchetti* and *Grosso, supra,* law enforcement officers were entitled to rely upon the earlier decisions and to obtain warrants for searches pursuant to them. See Silbert v. United States, 282 F.Supp. 635, 646 (D.Md.1968). The situation

here is clearly distinguishable from that before the Second Circuit in Pizzarello, where the search had been declared unconstitutional *before* the tax assessment and motion for injunctive relief.

■ In any event, even if doubt existed as to the validity of the searches conducted pursuant to 1965 warrant, we would not be required on that account to grant relief, since "collateral determination of the admissibility of evidence in an administrative tax proceeding or investigation is not a proper sphere for injunctive intervention in the exercise of equitable jurisdiction." Koin v. Coyle, 402 F.2d 468, 470 (7th Cir. 1968), quoting from Zamaroni v. Philpott, 346 F.2d 365, 366 (7th Cir. 1965); cf. Campbell v. Guetersloh, 287 F.2d 878, 881 (5th Cir. 1961).

■ He cannot question the constitutionality of the tax. Marchetti v. United States, *supra*, 390 U.S. at 61, 88 S.Ct. 697, 19 L.Ed.2d 889, and he has failed completely to furnish any evidence supporting his contention that the amount of the tax is greater than that actually due. Despite the existence of evidence that some tax is due, his position appears to be that he should be permitted to avoid payment of any tax on the basis of his conclusory statement to the effect that the assessment is "astronomical." Furthermore, he fails to offer any facts supporting his claim of economic hardship, such as evidence with respect to his financial condition, net worth and earnings.

The possibility of an impermissible choice would be eliminated altogether if plaintiff were permitted to testify in opposition to the assessment without his testimony being used against him in criminal proceedings. See, e. g., Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967) (defendant's testimony in support of motion to suppress may not be used against him at trial on the issue of guilt if he objects). However, plaintiff here has a remedy available to him that was not present in the various forfeiture decisions relied upon by him, where the plaintiff was faced with a forfeiture that would become final unless he incriminated himself. See, for instance, United States v. United States Coin and Currency, 393 F.2d 499 (7th Cir. 1968); United States v. $125,882 in U. S. Currency, 286 F.Supp. 643 (S.D.N.Y.1968); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (public servant faced with loss of position unless he testified); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (attorney forced to testify or lose his license).

Here, as distinguished from those cases, since the excise tax is divisible, plaintiff may, if he considers the assessment to be excessive, pay part of the tax and sue for a refund, see Flora v. United States, 362 U.S. 145, 171, n. 37(b), 80 S.Ct. 630, 4 L.Ed.2d 623 (1959). Although the burden would be upon him in such a suit to show that the assessment is wholly or partially incorrect, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959), that burden would be met if he showed that the method of assessment was so arbitrary as to render the assessment fatally defective. United States v. Hover, 268 F.2d 657, 665 (9th Cir. 1959); Rinieri v. Scanlon, 254 F.Supp. 469 (S.D.N.Y.1956); see Mertens, 9 Law of Federal Income Tax § 50.61, n. 3.1. However, since the record here indicates that some tax is undoubtedly due and owing, the issue on a refund suit would be one of amount rather than total invalidity. Furthermore, after commencement of such a refund suit, he may wait until criminal prosecution for violation of gambling laws becomes barred by the statute of limitations before offering otherwise incriminating proof, including his own testimony, with respect to the incorrectness of the assessment and thus avoid its incriminating effect. In the present case, for instance, prosecution of the plaintiff for violation of New York state

or federal laws on account of gambling activities forming the basis of the assessment will be barred by the five-year statute of limitations after May 21, 1970[9] less than seven months from now. Accordingly, we conclude that the plaintiff has failed to make a sufficient showing that he is faced with an impermissible choice in violation of his Fifth Amendment rights and his motion must be denied.

The foregoing constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52(a), F.R.C.P.

It is so ordered.

9. The New York Statute of Limitations, Code of Cr.Proc. § 142, provides:

"A prosecution for a felony * * * must be commenced within five years after its commission * * *."

The New York State criminal provision, Penal Law § 225.10, McKinney's Consol. Laws, c. 40, that is probably applicable provides:

"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:

 * * * * *

"(2) Receiving, in connection with a lottery or policy scheme or enterprise, (a) money or written records from a person other than a player whose chances or plays are represented by such money or records, or (b) more than five hundred dollars in any one day of money played in such scheme or enterprise.

"Promoting gambling in the first degree is a class E felony."

With respect to federal offenses, 18 U. S.C. § 3282 provides:

"§ 3282. *Offenses not capital*

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."