**Michael Earl LEWIS, Appellee,**

**v.**

**A. W. SANDLER, Revenue Officer, and the United States of America, Appellants.**

**No. 73-2185.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1974.

Decided June 6, 1974.

Gary R. Allen, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks and Leonard J. Henzke, Jr., Attys., Tax Div.; Keith S. Snyder, U. S. Atty., W. D. N. C., and David B. Sentelle, Asst. U. S. Atty., on brief), for appellants.

George S. Daly, Jr., Charlotte, N. C., on brief, for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

This is an interlocutory appeal from a district court order denying the defendants' motion to dismiss for lack of jurisdiction. Michael Earl Lewis, purporting also to represent a class, seeks relief from jeopardy assessments and income tax levies imposed on alleged dealers in illicit drugs. We conclude that this action is barred by the anti-injunction provision in the Internal Revenue Code, the tax exception to the Declaratory Judgment Act, and failure to file an administrative claim for refund. Therefore, we vacate the order and remand the case with directions that it be dismissed.

There is little dispute about the salient facts. In September 1971, Charlotte police arrested Lewis and charged him with an offense involving the possession and sale of marijuana. At the time of his arrest, the police seized from his custody two pounds of marijuana and a sum of cash alleged by Lewis to be in excess of $600, but reported by the police to be in the amount of $467.00. In June 1972, a state judge dismissed the criminal charges against Lewis and ordered the police to return the $467 which they had been holding.

■ Instead of returning the money, a police officer notified an agent of the United States Internal Revenue Service that Lewis had been substantially involved in the illegal sale of narcotics for a number of months and that the police had arrested him and seized $467. Acting on this information, the Service terminated Lewis' tax year effective June 14, 1972, computed his taxable income from the sale of drugs from January 1 through June 14, 1972 to be $57,535.24, and assessed a tax of $27,261.85. The

Service then levied on the $467 held by the Charlotte police.[1]

Lewis brought this class action on behalf of himself and all other similarly situated persons whose property had been seized by the Charlotte police department and subsequently distrained by the Service. His complaint asserted jurisdiction under 28 U.S.C. § 1343(3), 42 U.S.C. § 1983, and "federal common law." It alleged that the city and state officials conspired to unconstitutionally deprive him and the class he represents of their property without due process of law. Lewis sought a return of all funds that had been seized, a declaration that such seizures are unconstitutional, and an injunction against similar conduct in the future.

Soon after Lewis filed his action, the Service unconditionally returned the $467 and abated the jeopardy assessment. It explained the abatement by admitting that the tax was mistakenly assessed for 1972, the year it received the information, while it should have been based on the sales Lewis was alleged to have made before his arrest in September 1971.

## I

### *Mootness*

■■ At the threshold, we are confronted with the government's claim that the case is now moot since Lewis' money has been returned to him and the assessment has been abated. However, this contention fails to account for the other members of the class Lewis purports to represent, and, as this circuit has held previously, actions on behalf of a class may survive even though the claims of individual named plaintiffs do not. Brown v. Gaston County Dyeing

---

1. The Service terminated Lewis' tax year and made a jeopardy assessment pursuant to the Int.Rev.Code of 1954 § 6851(a)(1). The levy on the money in the hands of the police was made pursuant to § 6331 of the Code. Section 6332(a) required the police to surrender the money which was the subject of the Service's levy. By honoring the levy on

the $467 in their hands, the police were discharged from liability to Lewis for that amount. § 6332(d). These summary procedures do not deprive a taxpayer of due process of law because judicial review is available in a suit for refund. *Cf.* Phillips v. Commissioner, 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

Machine Co., 457 F.2d 1377, 1380 (4th Cir. 1972) ; *cf.* Indiana Employment Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973). Moreover, it appears to be a current policy of the Service to make jeopardy assessments and levies against the assets of suspected drug dealers. This raises a not unreasonable expectation that such practices will be repeated, and the government could continue to avoid review simply by abatement of the assessment. The controversy, therefore, is not moot. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) ; Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 515, 31 S. Ct. 279, 55 L.Ed. 310 (1911).

## II

*Injunction and Declaratory Judgment*

Lewis' principal claim is for injunctive and declaratory relief that will restrain future jeopardy assessments and levies in similar cases. The government asserts that Lewis' claim is barred by the Anti-Injunction Act[2] and the tax exception to the Declaratory Judgment Act.[3] Lewis, on the other hand, says these statutes are inapplicable because, in his view, the city and federal officials were not truly engaged in assessing and collecting a tax. He charges that although neither he nor members of the class have been proved guilty of crime, the state and federal officers conspired to deprive them of due process of law by arbitrarily escheating their property. Citing government press releases that warn narcotics dealers of rigorous enforcement of tax laws, Lewis claims that the government's purpose is the suppression of narcotics traffic by unconstitutional means and not the collection of revenue.

Charges that the Service should be enjoined from proceeding against taxpayers because it is motivated by purposes other than the collection of revenue have been explicitly rejected by the Supreme Court. In Bailey v. George, 259 U.S. 16 (1922), the Court ruled that a complaint challenging the constitutionality of a tax designed to eliminate child labor failed to state a case for restraining the assessment and collection of the impost. The Court held that the Anti-Injunction Act was applicable, notwithstanding that on the same day it ruled in a refund suit that the tax was unconstitutional. Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922). Recently, in an opinion that was not available to the district court, the Supreme Court held that the Anti-Injunction Act prohibited a preenforcement injunction to restrain the Revenue Service from revoking the tax exempt status of a university that restricted admission to white applicants. Bob Jones University v. Simon, —— U.S. ——, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) ; *accord,* Alexander v. Americans United, Inc., —— U.S. ——, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). The Court rejected an argument that in principle is indistinguishable from Lewis' claim that the Service is not engaged in protecting the revenue but has instead launched a campaign to utilize unconstitutional methods for suppressing narcotics traffic. Speaking for the Court, Mr. Justice Powell said:

"[Bob Jones University] further contends that the Service's actions do not represent an effort to protect the revenues but an attempt to regulate

---

2. The Anti-Injunction Act, Int.Rev.Code of 1954 § 7421(a), provides, with exceptions not pertinent to this case, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

3. The tax exception to the Declaratory Judgment Act is italicized in the following extract from the Act, 28 U.S.C. § 2201 (1970) :
"In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes,* any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . . ."

the admissions policies of private universities. Under this line of argument, the Anti-Injunction Act is said to be inapplicable because the case does not truly involve taxes. We disagree.

"The Service bases its present position with regard to the tax status of segregative private schools on its interpretation of the Code. There is no evidence that that position does not represent a good-faith effort to enforce the technical requirements of the tax laws, and, without indicating a view as to whether the Service's interpretation is correct, we cannot say that its position has no legal basis or is unrelated to the protection of the revenues. The Act is therefore applicable. Petitioner's attribution of non-tax related motives to the Service ignores the fact that petitioner has not shown that the Service's action is without an independent basis in the requirements of the Code." 42 U.S. L.W. at 4725, [94 S.Ct. at 2047].

Here, too, the Service's assessment and levy are founded on the Revenue Code. The Code authorizes jeopardy assessments when the Service finds that a taxpayer designs to conceal his property or "to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax . . . ."[4] Nothing in the record establishes that the Service has inappropriately applied the summary procedure authorized by the Code to persons suspected of dealing in narcotics.

■ We, therefore, conclude that Lewis' major premise is unfounded. Despite his protestations that this is not truly a tax case, his controversy with the Service is subject to the Anti-Injunction Act. While the government admitted that it could not ultimately prevail against Lewis because it mistakenly alleged that he received 1971 income in 1972, it is unlikely that this error will be repeated. Thus Lewis' complaint does not establish that in the future he,

or members of the class, can rely on the narrow exception to the Anti-Injunction Act stated in Enochs v. Williams Packing & Navigation Company, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). This exception requires the taxpayer to prove irreparable harm and that under no circumstances can the government ultimately prevail. Neither Lewis nor members of the class will suffer irreparable harm because the law provides an adequate remedy for refunds. *Cf.* California v. Latimer, 305 U.S. 255, 261, 59 S.Ct. 166, 83 L.Ed. 159 (1938). Moreover, sales of narcotics, though illegal, generate taxable income, and it is probable that the government will be able to recover at least part of the tax that is due. *Cf.* James v. United States, 366 U. S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

■ We also conclude that the Anti-Injunction Act is broad enough to prohibit enjoining the local officials from furnishing information to the Service about persons suspected of selling narcotics. Since the information is used by the Service for assessment and levy, an injunction drying up the source of the information would unwarrantedly impede collection of the revenue.

■ Similarly, the tax exception to the Declaratory Judgment Act bars relief even though Lewis challenges the legality of the assessment and levy rather than the validity of the tax itself. Taylor v. Allen, 204 F.2d 485 (10th Cir. 1953).

We hold, therefore, that the district court lacked statutory authority to grant Lewis or any member of the class injunctive or declaratory relief.

### III

### *Claim for Refund*

■■ District courts have jurisdiction to try civil actions for the recovery of taxes that have been erroneously or illegally assessed or collected.[5] But in order to invoke this jurisdiction the tax-

---

4. Int.Rev.Code of 1954 § 6851(a)(1).

5. Title 28 U.S.C. § 1346(a).

payer must file a claim for a refund, and suit may not be instituted until the expiration of the statutory period for consideration of the claim by the Service.[6] Neither Lewis nor any member 'of the class alleged compliance with these requirements before the institution of this action. The failure to file an administrative claim for refund is fatal to this aspect of Lewis' complaint. United States v. Felt and Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931).

Moreover, a taxpayer ordinarily must pay the full assessment before bringing suit. Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), aff'd on rehearing 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 rehearing denied 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960). There is, however, an exception to this well established rule when, as here, the Commissioner has terminated the taxable year by summary assessment. *See* Irving v. Gray, 479 F.2d 20, 24 n. 6 (2d Cir. 1973). Lewis seeks the advantage of this exception by calling for an accounting of the amount collected for the shortened year. Again, however, Lewis has failed to take the necessary administrative steps to perfect this claim. If a taxpayer does not pay the full assessment for the terminated period, he may nevertheless sue for a refund provided he files returns for the terminated period and the full year. In this event, the returns open the terminated period and serve as an informal claim for a refund.[7] The failure of the complaint to allege compliance with this procedure for paying less than the full assessment when the tax year has been summarily terminated creates an additional bar to consideration of the claims for refunds on behalf of the class.

Accordingly, we vacate the order of the district court and remand the case for dismissal.

---

6. Int.Rev.Code of 1954 §§ 7422(a) and 6532(a)(1). *E. g.*, Rinieri v. Scanlon, 254 F.Supp. 469 (S.D.N.Y.1966).

7. Int.Rev.Code of 1954 § 6851(b), Treas.Reg. §§ 1.6851–1(b)(2) and (c); 301.6402–3(b) (1958). *See* Parrish v. Daly, 350 F.Supp. 735 (S.D.Ind.1972).