**Application of Dr. J. W. SCHONFELD, LTD. and Jerome W. Schonfeld for the Return of Seized Property.**

**Civ. A. No. 78–184–N.**

United States District Court, E. D. Virginia, Norfolk Division.

Aug. 18, 1978.

Clark, Hofheimer & Stant, Virginia Beach, Va., for petitioner.

J. Brian Ferrel, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., William B. Cummings, U. S. Atty., E. D. Va., Alexandria, Va., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on a motion of petitioners, Dr. J. W. Schonfeld, Ltd. and Jerome W. Schonfeld, to strike an Insufficient Defense pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Petitioners move to strike the Government's First Defense, which asserts that this Court lacks jurisdiction over the subject matter and the United States by virtue of, but not limited to, the doctrine of sovereign immunity and the provisions of 26 U.S.C. § 7421 and 28 U.S.C. § 2201.

Petitioners instituted this proceeding on April 7, 1978, by filing a Petition for the Return of Property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.[1] On February 22, 1978, a warrant was issued for the search of petitioners' dental offices and for the seizure of certain specified books, records, and documents in those offices as evidence of violations of 26 U.S.C. §§ 7201 and 7206(1). Agents commenced the search and seizure pursuant to that warrant at 5:45 P.M. on February 23rd and continued until approximately 4:30 A.M. on February 24, 1978, the following day. Petitioners contend that the Fourth Amendment was violated because: (1) the agents seized considerable property beyond the scope of the property described in the search warrant; (2) the warrant was "fatally general;" and (3) the search was conducted at night, without authorization. To date, neither an indictment nor an information has been issued against petitioners.

Although petitioners have brought their action under Rule 41(e) of the Federal Rules of Criminal Procedure, the Court finds that a Motion to Strike an Insufficient Defense may be brought in this case. As stated *supra,* petitioners have not been indicted or informed against. No criminal proceeding was pending against them at the time of filing. This proceeding is, in effect, a civil action to recover personal property. *Dibella v. United States,* 369 U.S. 121, 131–32, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Smith v. Katzenbach,* 122 U.S.App. D.C. 113, 351 F.2d 810, 814 (1965); *Weldon v. United States,* 196 F.2d 874, 875 (9th Cir. 1952); *Lord v. Kelley,* 223 F.Supp. 684, 688 (D.Mass.1963), *appeal dismissed,* 334 F.2d 742 (1st Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). The Federal Rules of Civil Procedure are, therefore, fully applicable here. Fed.R. Civ.P. 1.[2]

---

1. Rule 41(e) states in pertinent part:
   (e) *Motion for Return of Property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.

2. The Court is aware that this case may fall within the doctrine of "anomalous jurisdiction," which projects the adjudicatory authority of a court to cover actions for the suppression or return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence. *See, e. g., United States v. Chapman,* 559 F.2d 402, 406 (5th Cir. 1977); *Richey v. Smith,* 515 F.2d 1239, 1243–44 (5th Cir. 1975); *Hunsucker v. Phinney,* 497 F.2d 29, 34–35 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). But whether the Court should ultimately adjudicate the merits of this case—*i. e.,* the constitutionality of the seizure of the records in controversy—and grant appropriate relief is not the issue here. The Court is determining only whether the First

■ It is true that the motion to strike is not a favored motion, at least in part because it is a drastic remedy. *See, e. g., Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir. 1977). Generally courts will deny a motion to strike a defense that is sufficient as a matter of law or fairly presents a question of law or fact that a court ought to hear. *See* 2A *Moore's Federal Practice* ¶ 12.21, at 2437 (1975). In this proceeding, however, the First Defense of the United States is totally without merit. Consequently, the Motion to Strike will be GRANTED.

### Sovereign Immunity

The First Defense of the United States asserted that the Court lacked jurisdiction over the subject matter and the United States by virtue of, but not limited to, the doctrine of sovereign immunity and the provisions of 26 U.S.C. § 7421(a) and 28 U.S.C. § 2201. The United States did not discuss the sovereign immunity defense in its memorandum in response to the Motion to Strike. However, because the doctrine was part of the First Defense in the response to the Petition for the Return of Seized Property, the Court will consider the issue.

■ The United States apparently contends that it is immune from suits for the recovery of illegally seized property. But clearly this proceeding is not barred by the doctrine of sovereign immunity. If petitioners' allegations are true, certain agents of the Federal Government have violated the terms of the search warrant and, thereby, the Fourth Amendment. When an officer exceeds the powers granted him by the sovereign, his actions beyond those limitations are considered individual and not sovereign actions. *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 689, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Even if the actions of the agents were considered those of the sovereign, federal rules and statutes allow a civil proceeding for the return of illegally seized property. Federal Rule of Criminal Procedure 41(e) allows a person "aggrieved by an unlawful search and seizure" to move the Court for the return of illegally seized property. Moreover, Congress only recently abolished the defense of sovereign immunity and requirements of jurisdictional amounts in any action seeking relief other than money damages from the United States and stating a claim based on the assertion of unlawful official action by an agency or by its officers or employees. 5 U.S.C. § 702; 28 U.S.C. § 1331.[3] The message of the case law, the statutes, and the Federal Rules is obvious: the United States cannot assert sovereign immunity as a defense to a petition for the return of illegally seized property.

### The Anti-Injunction Statute

The United States asserts that the Anti-Injunction Act, 26 U.S.C. § 7421, bars this proceeding. The Act provides, in pertinent part:

(a) *Tax.*—Except as provided in sections 6212(a) and (c), 6213(a), 7426(a) and (b)(1), and 7429(b), *no suit for the purpose of restraining the assessment or collection of*

Defense asserted by the United States is insufficient.

**3.** 5 U.S.C. § 702 provides in pertinent part:
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . .

28 U.S.C. § 1331 provides in pertinent part: (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

*any tax* shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed. (Emphasis added).

Congress, therefore, has foreclosed the possibility of obtaining injunctions while allowing taxpayers to challenge a determination of deficiency in the Tax Court (26 U.S.C. §§ 6212(a) and (c) and 6213(a)), and to challenge a jeopardy assessment or a levy made on property in federal district court (26 U.S.C. §§ 7426(a) and (b)(1), and 7429(b)). As the Supreme Court has observed:

> The Anti-Injunction Act apparently has no recorded legislative history, but its language could scarcely be more explicit . . . The Court has interpreted the principal purpose of this language to be the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, "and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

*Bob Jones University v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974).

■ Courts have construed the Anti-Injunction Act as prohibiting them from considering requests for an injunction that would have the effect of immunizing the taxpayer from liability. Thus, taxpayers may not bring suit to obtain injunctions preventing the revocation of tax-exempt status,[4] prohibiting the Internal Revenue Service from taking further action in the collection of taxes or penalties,[5] invalidating provisions of the Internal Revenue Code,[6] removing tax liens,[7] or declaring unlawful the methods used by the Internal Revenue Service to compute deficiencies.[8]

■ Requests for the suppression or return of illegally seized evidence have been denied when alternative avenues of relief exist. For example, if an assessment has been made, the taxpayer can move for suppression and return in a suit for a refund. *See, e. g., Patrick v. United States,* 524 F.2d 1109, 1120 (7th Cir. 1975); *Brittingham v. United States Commissioner of Internal Revenue,* 451 F.2d 315, 316–17 (5th Cir. 1971); *Hamilton v. United States,* 309 F.Supp. 468 (S.D.N.Y.1969), *aff'd per curiam,* 429 F.2d 427 (2d Cir. 1970), *cert. denied,* 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971). And a taxpayer who has been indicted and arraigned under criminal tax statutes may request the return of illegally seized evidence in the subsequent criminal proceeding. *Chester v. Ross,* 231 F.Supp. 23, 26–27 (N.D.Ga.1964), *aff'd,* 351 F.2d 949 (5th Cir. 1965).

■ Petitioners here have not brought their action "for the purpose of restraining the assessment or collection of any tax." They seek only the return of that property which was seized in violation of the Fourth Amendment. Only the validity of the seizure, not the petitioners' tax liability, is at issue here. Even if petitioners prevail, the Government may be able to retain as evidence for further investigations or proceedings a considerable number of Petitioners' books, records, and documents.[9] The tax

4. *Bob Jones Univ. v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).

5. *E. g., United States v. Dema,* 544 F.2d 1373 (7th Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977); *Professional Eng'rs, Inc. v. United States,* 527 F.2d 597 (4th Cir. 1975); *Patrick v. United States,* 524 F.2d 1109 (7th Cir. 1975); *Brewster v. United States,* 423 F.2d 1061 (5th Cir. 1970); *Flood v. Commissioner of Internal Revenue,* 275 F.Supp. 801 (E.D.Wisc.1967).

6. *E. g., Lewis v. Sandler,* 498 F.2d 395 (4th Cir. 1974); *DeJulis v. Alexander,* 393 F.Supp. 822 (D.Wyo.1976); *White v. Boyle,* 390 F.Supp. 514 (W.D.Va.1975), *aff'd,* 538 F.2d 1077 (4th Cir. 1976).

7. *E. g., Calafut v. Commissioner of Internal Revenue,* 277 F.Supp. 266 (M.D.Pa.1967).

8. *E. g., Campbell v. Guetersloh,* 287 F.2d 878 (5th Cir. 1961).

9. Petitioners contend that all property seized during the search should be returned, for two reasons. First, the agents' allegedly arbitrary seizure of "any documents which interested them, whether or not they were described in

liability of petitioners will remain unresolved regardless of the outcome of this proceeding.

The Government, moreover, can scarcely complain that the return of illegally seized property is "judicial interference." Any evidence obtained by searches and seizures in violation of the Constitution is inadmissible in a federal criminal trial. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The exclusionary rule would also appear applicable in civil investigations as well. *See, e. g., Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

Recognizing those facts, Rule 41(e) provides a remedy for those taxpayers who, like petitioners here, allege that their property has been seized in violation of the Fourth Amendment. Had Congress desired to exempt tax cases from the scope of Rule 41(e), it could have and would have so stated. Since it did not, a motion for the return of property cannot be termed a suit restraining tax assessments or collections.

Petitioners' lack of alternative remedies also makes the Anti-Injunction Act inapplicable here. Had petitioners been indicted and tried for violation of the criminal statutes cited in the warrant, they could have moved for suppression and return of illegally seized evidence during the course of the criminal proceeding. But neither an indictment nor an information has been issued against petitioners, and the bare possibility that the Government might commence a criminal prosecution at a later date is insufficient for the Court to deny the petition or postpone a decision. Courts have granted relief like that sought here when a long period has transpired since the search and yet no criminal case is pending. *E. g., Goodman v. United States,* 369 F.2d 166 (9th Cir. 1966). The Government has had ample time—more than five months—since the search to collect evidence and commence a prosecution. To require petitioners to await further a prosecution that may never materialize would constitute a gross miscarriage of justice.[10]

The Anti-Injunction Act should not be applied here because to do so would deny any forum or means of relief to petitioners.

the warrant," makes the search warrant an unconstitutional general warrant. Second, they allege, part of the search occurred at night, in violation of the terms of the warrant and Federal Rule of Criminal Procedure 41(c).

In the alternative, however, petitioners seek "at the very least" those documents not within the purview of the supporting affidavit or the description of the property to be seized.

The warrant authorized the seizure of

. . . books, records, and documents applicable to the fiscal years ending February 28, 1975, February 29, 1976, and February 28, 1977, reflecting receipts and expenses of Dr. J. W. Schonfeld, Ltd. and Dr. J. W. Schonfeld including:

1. Night and daytime appointment books.
2. The "green charts" or "green cards" with green lines and the "yellow beige charts" or "yellow beige cards" with red lines showing payments received from and outstanding balances of each patient.
3. The alphabetical listing of those patient record files which have been removed from the laboratory.
4. The daily sheets or daily worksheets showing payments received each day and a cumulative balance.

5. The white statement cards or family ledger cards showing amounts charged each patient, amounts paid, and previous outstanding balances for each family.
6. Any other books, records and documents reflecting income and expenses of Dr. J. W. Schonfeld, Ltd. and Dr. J. W. Schonfeld.

10. Furthermore, the record does not indicate that the Government has made a determination of deficiency, a jeopardy assessment, or a levy in this case. Had it done so, of course, petitioners could have moved for suppression and return in a suit for a refund and this petition would be inappropriate. *See, e. g., Zamaroni v. Philpott,* 346 F.2d 365 (7th Cir.), *cert. denied,* 382 U.S. 903, 86 S.Ct. 238, 15 L.Ed.2d 157 (1965); *Hamilton v. United States,* 309 F.Supp. 468 (S.D.N.Y.1969), *aff'd per curiam,* 429 F.2d 427 (2d Cir. 1970), *cert. denied,* 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971). Absent action by the Internal Revenue Service, this proceeding is the petitioners' only remedy. The Court will not be drawn into speculating whether the Government eventually will take action.

Since any illegally obtained evidence cannot be introduced into evidence at trial, return of this property to its owners will not needlessly frustrate the assessment and collection of taxes. The validity of the search as to certain property, not the legal right to the disputed sums, is at issue. Finally, petitioners cannot raise their motions at another proceeding, for no criminal or civil actions have been brought against them. The Court, therefore, concludes that 26 U.S.C. § 7421(a) is not a bar to petitioners in this case.

### The Declaratory Judgment Act

As an alternative defense, the United States cites the Declaratory Judgment Act, which provides in pertinent part:

In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954,* any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. (emphasis added)

28 U.S.C. § 2201. (emphasis added)[11] It is asserted that the petitioners' request for return of illegally seized property is in effect a request for a declaratory judgment "with respect to federal taxes" barred by the Act.

■■■■ The federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act's prohibition against suits for the purpose of restraining tax collections or assessments. *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 759 n. 10, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Bob Jones University v. Simon,* 416 U.S. 725, 733 n. 7, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Professional Engineers, Inc. v. United States,* 527 F.2d 597, 600 (4th Cir. 1975). Regardless of whether the two

statutes are coterminous in application—an issue the Supreme Court refused to decide in *Alexander* and *Bob Jones*—clearly they are very closely related. Therefore, like the Anti-Injunction Act, the Declaratory Judgment Act does not bar petitioners in this case.

■■■■ The Declaratory Judgment Act seeks to prevent federal courts from issuing declaratory judgments that determine, or have the effect of determining, the plaintiff's tax liability. Like the Anti-Injunction statute, the Act attempts to minimize judicial interference in the taxation process and force the legal right to the disputed sums to be determined in a suit for a refund. *See, e. g., Taylor v. Allan,* 204 F.2d 485, 486 (10th Cir. 1953). In *Lewis v. Sandler,* 498 F.2d 397 (4th Cir. 1974), for example, the Fourth Circuit held that the Act barred a challenge to the constitutionality of an assessment and levy. Although the taxpayer challenged the assessment and levy rather than the validity of the tax, the summary procedures were specifically authorized by the Internal Revenue Code; thus, a successful challenge would have completely prevented the collection of taxes that the Service claimed were due. *See id.* at 399. If such a result would occur, the taxpayer must find relief elsewhere. *E. g., Taylor v. Allan, supra; DeJulis v. Alexander,* 393 F.Supp. 822 (D.Wyo.1976); *Flood v. Commissioner of Internal Revenue,* 275 F.Supp. 801 (E.D.Wisc.1967).

Petitioners here are not seeking a declaratory judgment. While in a sense a ruling that property has been seized in violation of the Fourth Amendment is a declaratory judgment, the United States cannot seriously contend that any ruling on a motion is a declaratory judgment. Rule 41(a) of the Federal Rules of Criminal Procedure authorizes the Court to decide whether Fourth Amendment violations have occurred and to order the return of illegally seized property.

---

11. 28 U.S.C. § 7428 permits the Tax Court, the Court of Claims, and federal district courts to issue declaratory judgments relating to the status and classification of organizations as charitable organizations or foundations for tax purposes. Obviously, that section is inapplicable in this proceeding.

Furthermore, as stated *supra,* the objectives of the Declaratory Judgment Act will not be frustrated by granting the relief sought here. Petitioners are not attempting to secure a judgment of their tax liability. They contest only the seizure of property arguably in violation of the Fourth Amendment; a judgment in their favor might still leave in the possession of the United States a large volume of their records for use in future investigations and prosecutions. In addition, because no criminal or civil action has been taken in this case by the United States, no alternative proceeding exists in which petitioners could obtain relief. Therefore, the Court concludes that the Declaratory Judgment Act is inapplicable here.

For the foregoing reasons, the Motion to Strike the First Defense of the United States is GRANTED.

To date the United States has not filed a brief in opposition to the aforementioned Application for the Return of Seized Property, except insofar as it has discussed the First Defense in opposing the Motion to Strike. If the United States wishes to file a brief in support of the other defenses asserted on June 9, 1978, in its initial response to the Application, it may do so.[12]

---

12. The Second Defense of the United States was that petitioners have failed to state a claim upon which relief can be granted. As its Third Defense, the United States denied most of the allegations of fact and law contained in the petition and accompanying brief and affidavit. In addition, the following affirmative defenses were asserted: (1) that the search warrant was lawfully issued and lawfully executed and that all records seized were relevant and material to the documents described in the warrant; (2) that most of the original records seized had been returned to petitioners and that the remainder is needed for further investigation; and (3) that petitioners gave their tacit consent to the seizure.