MUSIC DELI & GROCERIES, INC. and
Mahmoud Shams, Plaintiffs,

v.

INTERNAL REVENUE SERVICE,
DISTRICT OF MANHATTAN,
Defendant.

No. 90 Civ. 4180 (RWS).

United States District Court,
S.D. New York.

Dec. 27, 1991.

Rosenman & Colin, New York City (David A. Slossberg, of counsel), for plaintiffs.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Claude M. Millman, Asst. U.S. Atty., of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiffs Music Deli & Groceries, Inc. ("Music Deli") and Mahmoud Shams ("Shams"; collectively the "Plaintiffs") have moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for an order vacating the prior judgment in this action and pursuant to Rule 15 for leave to file an amended and supplemental complaint. For the reasons set forth below, the motions are granted and the Plaintiffs' First Amended and Supplemental Complaint ("Amended Complaint") deemed filed. The Amended Complaint, however, is dismissed in part pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, with leave to replead.

*The Parties*

Music Deli is a corporation organized under the laws of New York State with its principal place of business on Eighth Avenue in Manhattan. The corporation was formed to run a delicatessen/grocery business (the "Deli") that is no longer in active operation.

Shams is a citizen and resident of New Jersey.

The Internal Revenue Service (the "Service") is an agency of the federal government. The Service allegedly seized and sold the contents of the Deli to satisfy a tax assessment.

*Facts [1] and Prior Proceedings*

Shams is a refugee from Afghanistan who fled to the United States in 1981 after the Soviet Union's invasion. He became a citizen of the United States in 1988.

In 1984, Shams and two others decided to invest in the Deli. They each paid $20,000 in cash, with the balance of the $131,000 purchase price secured through a three-year promissory note. Shams bought out his two partners in 1986 for $12,000 each. Thereafter, Shams operated the Deli by himself. He worked from six in the morning till eleven at night, seven days a week, eking out a living.

The present dispute has its roots in 1987. That year, the Service notified Shams that he had not filed and paid Employer Quarterly Tax Returns and Employer Annual Federal Unemployment Tax Returns for 1985, 1986, and 1987 in a timely manner. Shams apparently contacted the Service and explained that he had paid sales taxes and that, because the Deli had no other employees, he did not believe he was required to pay employer taxes.

The Service informed Shams that he was required to declare himself an employee, pay taxes, and file the two forms if he took wages from the Deli. In 1988, the Service seized the Deli and its contents, only to release it upon the condition that Shams appear at the Service, file the forms, and make the payments. Shams did as requested, filing forms for 1985 through 1988.

The filing was deemed incomplete by the Service and an assessment of $6,591.05 entered. Shams then filed amended returns in 1989 at the Service's behest. His liability was actually less than the original assessment, so the Service agreed to a number of downward adjustments. With penalties, the total tax liability allegedly is over $23,000. Shams claims to have paid more than $5,000 toward settling the account.

On May 25, 1990, the Service obtained an ex parte order permitting it to seize the contents of the Deli. The order was carried out on May 29, with Shams being barred from the premises and the locks changed. Shams contends that he never received notice of the Service's intention to seize and levy the Deli.

1. The facts are based primarily on the Plaintiffs' version of the events at issue and do not constitute findings of fact by the Court.

Shams brought an order to show cause, *pro se*, on June 20, 1990, seeking to enjoin the Service from seizing and selling the Deli and its contents. This Court dismissed the complaint on July 2, 1990, on two grounds. First, because Music Deli was a corporation, the complaint was dismissed for lack of corporate representation. Second, the Anti–Injunction Act, 26 U.S.C. § 7421, barred this Court from granting the injunction sought. The clerk entered judgment against the Plaintiffs and no appeal was brought.

The Deli and its contents were sold at public auction on July 24, 1990. That day, Shams wrote to the Court asking that *pro bono* counsel be appointed. This request was granted on August 2, 1991, and a Notice of Appearance filed on October 23, 1990. Various conferences took place thereafter, and discovery was conducted. As a result of discovery, the Plaintiffs now claim that no certified mail receipt regarding the notice of seizure in May 1990 can be found in the Service's administrative file, even though receipts do exist for other mailings.

The present motion was filed on July 2, 1991. Oral argument was heard on November 7, 1991, and the motion considered submitted as of that date.

*Discussion*

### I. The Prior Judgment is Vacated

The Plaintiffs argue that the prior judgment should be vacated on account of newly discovered evidence and in the interests of justice. The Service argues that any new evidence would not change the outcome of the prior judgment and that there are no extraordinary circumstances warranting such relief.

Rule 60(b) of the Federal Rules of Civil Procedure provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due

diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken....

Fed.R.Civ.P. 60(b).[2]

■ "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. In other words it should be broadly construed to do 'substantial justice,' yet final judgments should not 'be lightly reopened.'" *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) (citations omitted) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981)). A motion under Rule 60(b) is directed to the "sound discretion" of the district court. *Id.; see also Matarese v. Le Fevre*, 801 F.2d 98, 106–07 (2d Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *United States v. Cirami*, 563 F.2d 26 (2d Cir.1977).

■ The Plaintiffs base their Rule 60(b) motion in part on the apparent absence of a certified mail receipt in the Service's administrative file for the notice of seizure. Under IRC § 6331(d), a taxpayer's property may not be levied unless notice has been given no less than 30 days prior to the levy date. Notice may be given in person, left at a dwelling or usual place of business, or sent by certified or registered mail. If the alleged absence of a receipt is true, then the seizure and levy taken upon the Deli were not performed properly.

---

**2.** The motion was timely filed for all six of Rule 60(b)'s subparts.

The Service first contends that this evidence is not "newly discovered" since the Plaintiffs contended at oral argument on the original complaint that notice of the levy had never been received. However, under the circumstances of the original hearing, the Plaintiffs were not able to offer any proof substantiating this contention. In fact, the alleged absolute absence of any evidence showing that the Plaintiffs had been notified of the levy was not uncovered until after the original complaint was dismissed. Therefore it can be viewed as newly discovered.

■ The Service next contends that even if this is so, the prior opinion was correct in that the Plaintiffs were not entitled to relief under the Anti–Injunction Act and that the judgment thus should not be reopened. While Plaintiffs do not contest the prior ruling under the Anti–Injunction Act, they do argue that the original complaint can be construed as seeking a claim for damages in law and that such evidence is material to any claim the Plaintiffs may have in law.

This contention goes to the Plaintiffs' original status in the prior proceeding. Shams drafted the original complaint and appeared *pro se*. Of course, "[i]t is settled law that the allegations of such a complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers....'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)); *see also Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir.1989).

The last sentence of the original complaint reads: "As a remedy I sought [sic] release of property of Music Deli & Groceries, Inc." Although this appears to seek only injunctive relief, other portions of the complaint can be read as alleging wrongs for which the proper remedy is damages.

Since whether Shams had received notice of the impending seizure and levy would go to the heart of any claim for damages that he might have, the absence of the receipt within the Service's files is newly discovered evidence within the scope of Rule 60(b)(2).

■ Shams's *pro se* status during the original hearing mandates granting the requested relief under Rule 60(b)(1) as well.[3] The policy in favor of hearing a plaintiff's claim on the merits is strong, *Kotlicky v. United States Fidelity & Guaranty Co.*, 817 F.2d 6, 9 (2d Cir.1987), and, as a *pro se* litigant, Shams's failure to request damages explicitly in the original complaint is the type of excusable neglect Rule 60(b) is intended to correct. *See also Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir. 1985); *cf. James v. United States*, 459 U.S. 1044, 1046–47, 103 S.Ct. 465, 466–67, 74 L.Ed.2d 615 (1982) (Brennan, J., respecting the denial of the petition for writ of certiorari).

■ Moreover, the Service will not be prejudiced by granting such relief. Soon after the original complaint was dismissed, Shams sought, and was granted, *pro bono* counsel. Before the present motion was made, there were several discussions among counsel and some discovery took place. The Service therefore was aware that such a motion, or a new action, would be filed. Thus there will be no hardship in granting the Plaintiffs relief from the prior judgment.

## II.   The Amended Complaint is Allowed

■ The Plaintiffs also seek to amend and supplement their original complaint. The new complaint would allege six causes of action against the Service. The first, second and fourth claims for relief seek damages pursuant to IRC § 7433 for violations of IRC §§ 6331 and 6335 in connection with the seizure and sale of the Deli.

---

**3.** The parties partially treated Sham's motion as being under Rule 60(b)(6). The Court does have a "grand reservoir of equitable power to do justice in a particular case" under its provisions, *Matarese*, 801 F.2d at 106, and in extreme circumstances a party's *pro se* status may require applying its terms. Here, however, the circumstances indicate that the motion is more properly treated under the first clause of Rule 60(b). *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858; *cf. Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 2204 n. 11, 100 L.Ed.2d 855 (1988).

The third seeks to frame a *Bivens* action, while the fifth and sixth seek the return of records and an accounting.

Rule 15(d) of the Federal Rules of Civil Procedure provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense....

Fed.R.Civ.P. 15(d).

Although Rule 15(d) does not include Rule 15(a)'s mandate that leave to amend be freely given when justice so requires, the same standards apply to motions under both of these subdivisions of Rule 15. *Novak v. National Broadcasting Co.*, 724 F.Supp. 141, 145 (S.D.N.Y.1989); *Forbes & Wallace, Inc. v. Chase Manhattan Bank*, 79 F.R.D. 563, 564 (S.D.N.Y.1978). Thus leave to supplement should be freely granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ The first complaint was admittedly spartan, barely one and a half pages long in handwritten block letters. The Plaintiffs now offer a complaint that properly sets forth the relevant facts at issue and swears out several causes of action. The proposed complaint appears to allege at least one cognizable claim. *See infra.* Therefore the amended pleading is not completely futile, and, in light of the present circumstances, the Plaintiffs' motion to amend and supplement their pleadings is granted.

### III. The Amended Complaint is Partially Dismissed

At oral argument, the parties agreed to treat the Service's contentions against amending the complaint as a motion to dismiss pursuant to Rule 12(b)(6). For the reasons set forth below, the motion is granted in part.

■ A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

■ The Service argues that the first, second, and fourth causes of action should be dismissed because the Plaintiffs have not exhausted the administrative remedies available to them. These claims are brought pursuant to IRC § 7433, which provides that "[a] judgment for damages shall not be awarded ... unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." IRC § 7433(d)(1). The complaint does not allege nor give rise to an inference that such remedies were exhausted.[4] These claims are therefore dismissed. *Miss America Organization v. Mattel, Inc.*, 945 F.2d 536, 542 (2d Cir.1991).

---

**4.** Proposed regulations defining the administrative proceedings to be undertaken pursuant to IRC § 7433 were not published until June 1991, *see* Prop.Reg. § 301.7433–1. Nevertheless, the statute does impose an exhaustion requirement, and there is nothing in the pleadings suggesting the Plaintiffs sought administrative relief, no matter how informal.

"Plaintiffs concede that, as currently styled, the *Bivens* relief sought in the third claim for relief may be barred by the doctrine of sovereign immunity." Reply Memorandum 15. That claim is therefore dismissed for lack of subject matter jurisdiction.

■ The fifth claim seeks the return of the Deli's business records from the Service pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.[5] In reading the pleadings in a light most favorable to the Plaintiffs, it appears that this claim may be based on the alleged violation of the Plaintiffs' Fourth Amendment rights by the Service and its agents. If so, the Plaintiffs might be entitled to bring a claim seeking their return, notwithstanding the Anti–Injunction Act. *See, e.g., United States v. Martinson*, 809 F.2d 1364, 1369–70 (9th Cir.1987); *Linn v. Chivatero*, 714 F.2d 1278, 1283 (5th Cir.1983); *Application of J.W. Schonfeld, Ltd.*, 460 F.Supp. 332, 335–38 (E.D.Va.1978).

■ Although Rule 41(e) is a rule of Criminal Procedure and normally is inapplicable to a civil proceeding, courts will exercise "anomalous jurisdiction" over such claims in certain instances. *See Grant v. United States*, 282 F.2d 165, 168 (2d Cir. 1960). A request for this type of relief is equitable in nature, and thus limited by the traditional constraints placed upon these powers. *See Boyd v. United States Department of Justice*, 673 F.Supp. 660, 663 (E.D.N.Y.1987); *In re Application of Campola*, 543 F.Supp. 115, 117 (N.D.N.Y. 1982). There are two general reasons why a district court will exercise such powers. "First, to deter constitutional violations when the exclusionary rule is ineffectual because of the absence of criminal proceedings. Second, to facilitate return of im-

properly seized property." *Boyd*, 673 F.Supp. at 663 (citations omitted).

Here, the Plaintiffs allege that Service agents illegally seized their business books and records and have refused to return them despite repeated requests by the Plaintiffs. They seek to invoke this Court's equitable powers in an area where the Plaintiffs most likely have no other avenue of relief. *See Application of J.W. Schonfeld*, 460 F.Supp. at 336–37. The Government has not cited direct authority expressly forbidding this type of claim under like circumstances and is silent as to whether a criminal indictment is being sought. It therefore would be inappropriate to dismiss the fifth claim for failure to state a claim at this time. *Id.; see also Linn*, 714 F.2d 1278. *But see United States v. Rutherford*, 824 F.2d 831 (10th Cir.1987).

■ The sixth claim is a demand for an accounting by the Service. The Ninth Circuit has noted that "[t]here is … no statute that gives federal district courts jurisdiction over suits for tax accounting," *Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir.1988). Moreover, the Anti–Injunction Act, IRC § 7421, and the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), together bar a district court from ordering the Service to perform such an act. Therefore the sixth claim must be dismissed for failure to state a claim upon which relief may be granted.

*Conclusion*

For the reasons set forth above, the Plaintiffs' motions pursuant Rules 60(b) and 15 of the Federal Rules of Civil Procedure are granted. The prior judgment of the Court is vacated and the amended supplemental complaint allowed. The Govern-

---

5. Rule 41(e) states:
   A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.
   Fed.R.Crim.P. 41(e).

ment's motion to dismiss the supplemental complaint is granted in part and denied in part. The first, second, third, fourth, and sixth claims are dismissed, with leave granted to replead.

It is so ordered.