CELL ASSOCIATES, INC., a California Corporation, and Leonard Hayflick, an Individual, Plaintiffs-Appellants,

v.

NATIONAL INSTITUTES OF HEALTH, DEPARTMENT OF HEALTH, EDUCA-TION AND WELFARE, and Donald Fredrickson, Director of National Institutes of Health, Defendants-Appellees.

No. 76–1978.

United States Court of Appeals, Ninth Circuit.

Aug. 11, 1978.

William A. Fenwick of Davis, Stafford, Kellman & Fenwick, Palo Alto, Cal., for plaintiffs-appellants.

Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before DUNIWAY, CUMMINGS,* and SNEED, Circuit Judges.

DUNIWAY, Circuit Judge:

Hayflick and Cell Associates brought suit under the Privacy Act of 1974, 5 U.S.C. § 552a (1976), seeking to enjoin the government from releasing two investigative reports prepared by the National Institutes of Health (NIH). The district court denied a motion for a preliminary injunction and this appeal followed. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We affirm the order as to Hayflick and remand with directions to dismiss Cell Associates, Inc., as a plaintiff for lack of standing.

I.

FACTS

The two reports which are the subject of this appeal summarize the results of an investigation conducted by NIH into Hayflick's activities as a biological researcher working under contract with NIH at Stanford University between 1968 and 1975. The reports, which were completed and presented to the Director of NIH on January 30, 1976, are entitled "Investigation of Activities Relating to the Storage, Distribution and Sale of Human Diploid Cell Strains, WI–38 and WI–26" ("Cell Report") and "Investigation of Activities Relating to the Charging of Test Fees Under Contracts Awarded to Stanford University by the National Cancer Institute" ("Mycoplasma Report").

The Cell Report charges Hayflick with committing serious improprieties in his role as principal investigator under an NIH contract providing for the production and distribution of certain human cell cultures which are widely used in vaccine manufacture and medical research. Specifically, the report alleges that Hayflick (1) sold cell cultures developed and produced at government expense for personal gain; (2) violated an agreement with the government by transferring cell cultures from Philadelphia's Wistar Institute to Stanford University without authorization; (3) distributed cell cultures which he knew to be contaminated; (4) intentionally mislabelled cell cultures; (5) maintained inadequate records; and (6) lost, stole or squandered cell cultures which were in his possession when he commenced research at Stanford in 1968. The Cell Report concludes with recommendations that "a claim be established against Dr. Hayflick for the proceeds from the sales of Government property" and that "consideration be given to removing Dr. Hayflick as principal investigator or other key participant in NIH supported projects."

The Mycoplasma Report deals with Hayflick's activities as principal investigator under a separate NIH contract providing for the establishment and operation of a mycoplasma diagnostic laboratory at Stanford. It alleges that Hayflick improperly charged fees for mycoplasma testing conducted at government expense and then deposited the proceeds in personal accounts and accounts maintained by Stanford University or by Cell Associates, a corporation wholly owned by the Hayflick family. The Mycoplasma Report concludes with recommendations that all such fees, plus interest, be recovered by NIH and that "the practice of charging fees for mycoplasma tests and charging the costs to NIH research agreements . . . be discontinued."

Hayflick received copies of the reports shortly after their completion in January, 1976. He asked for and was given an op-

* The Honorable Walter J. Cummings, United States Circuit Judge for the Seventh Circuit, sitting by designation.

portunity to respond to the allegations in writing with a deadline of April 1 within which to do so. On March 17, before Hayflick had submitted his rebuttal, NIH received two requests for the reports under the Freedom of Information Act. Eventually five requests were received, four from publications, including the New York Times, and one from an individual who used the cells produced in Hayflick's laboratory in his research. NIH concluded that it was required under the Freedom of Information Act to release the reports. Before doing so, however, it told Hayflick of the requests and that it intended to honor them on March 25 unless a court order prohibiting disclosure were issued by that date.

On the morning of March 25, Hayflick and Cell Associates brought this action under the Privacy Act, seeking (1) preliminary and permanent injunctions barring release of the reports; (2) a temporary restraining order; (3) a declaration that Hayflick was entitled to "all proceeds collected to date . . . for the sale of human diploid cell material and the sale of mycoplasma testing services;" and (4) damages.

The district court denied the application for a temporary stay on the afternoon of March 25. NIH released the reports to the press that same evening. Through the New York Times Service and various scientific publications, summaries of the reports were widely disseminated. NIH is continuing to release the reports to anyone who asks for them and continues to maintain that it is required to do so.

On April 30 the district court denied the motion for an injunction against disclosure, stating:

> . . . I have extreme doubts about the jurisdiction of the Court to issue such an injunction.
>
> If I do have jurisdiction to do so, I find no basis in the record to compel or suggest that the Court should do so. On the balancing of the equities, I would find that the interests of the public and the medical community as a whole is far better served by a free distribution of information that raises questions about the

validity of materials that have been put into the scientific community and in general I have extreme doubts about the likelihood of the plaintiffs prevailing in this action and for those reasons, the preliminary injunction will be denied.

## II.

### STANDING

Subsection (g)(1), "Civil remedies," of the Privacy Act, 5 U.S.C. § 552a(g)(1) (1976), creates federal claims for relief for enumerated violations of the Act's substantive provisions and refers throughout only to actions brought by an "individual." Subsection (a)(2) defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." It is clear that Cell Associates, a corporation formed in 1974, is not an "individual" within the meaning of the statute. We therefore remand, with directions to dismiss Cell Associates, Inc., as a plaintiff for lack of standing under the Privacy Act.

## III.

### MOOTNESS

The parties do not argue the question of whether the case is moot, but we feel obliged to consider it. It could be argued that because the reports have been distributed to the four newspapers and to some individuals, and widely commented upon in the press, the horse is out of the barn and nothing can be accomplished now by locking the door. However, we reject this argument. NIH still has the reports, and is still willing to permit anyone who asks for them to see and obtain copies of them. Each time that this happens can add to Hayflick's damages. Under these circumstances, the action is not moot.

## IV.

### JURISDICTION TO ENJOIN DISCLOSURES

A. *The Statutory Scheme.*

The "Civil remedies" section of the Privacy Act, subsection (g) of 5 U.S.C.

§ 552a, links particular violations of the Act to particular remedies in a specific and detailed manner. It lists four types of agency misconduct that give rise to civil remedies and it then states the civil remedies applicable to each. The scheme can best be seen if the violations and remedies are set out side by side:

| VIOLATIONS | REMEDIES |
|---|---|
| (g)(1) Civil remedies<br><br>Whenever any agency<br><br>(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;<br><br>(subsection (d)(3) reads:<br><br>Each agency that maintains a system of records shall—<br><br>  \*    \*    \*    \*    \*    \*<br><br>(3) permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and . . . complete such review and make final determination . . . and if . . . the reviewing official also refuses to amend the record, . . . permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement . . . and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section;") | (g)(2)(A)<br><br>In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.<br><br>(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed. |
| (g)(1)<br><br>(B) refuses to comply with an individual request under subsection (d)(1) of this section;<br><br>(subsection (d)(1) reads:<br><br>"Each agency that maintains a system of records shall—<br><br>  \*    \*    \*    \*    \*    \*<br><br>(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;") | (g)<br><br>(3)(A) In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case, the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.<br><br>(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed. |

<u>VIOLATIONS</u>

(g)(1)

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

(Subsection (b) prohibits disclosure of "any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of the individual to whom the record pertains . . ." subject to 11 enumerated exceptions.)

<u>REMEDIES</u>

(g)

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

---

Hayflick claims that NIH has failed to comply with subsection (b). Thus his claim for relief arises under subsection (g)(1)(D) and the applicable civil enforcement action is the one authorized in subsection (g)(4). It provides for damages, costs, and attorney fees, where the agency acted in a manner that was intentional or willful. It does not provide for an injunction. There is a further remedy for willfully disclosing material, knowing that disclosure of it is prohibited, a criminal penalty prescribed in subsection (i)(1).

It thus appears on the face of the Act that Congress carefully described particular violations and provided particular procedures and remedies for each of them. In two instances, it provided for injunctive types of relief. See subsections (g)(1)(A) and (2) and (g)(1)(B) and (3), *supra*. In the other two instances, it provided for damages, but not for injunctive relief. See subsections (g)(1)(C) and (D) and (g)(4), *supra*.

Presumably, Congress intended to do what it did. This points to a conclusion that Congress did not intend to authorize the issuance of injunctions prohibiting disclosures of protected materials.

> [W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed. 379 (1929). This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius*.

*National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 1974, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646. *See also Switchmen's Union v. National Mediation Board*, 1943, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61; *United States v. Babcock*, 1919, 250 U.S. 328, 330, 39 S.Ct. 464, 63 L.Ed. 1011. Were Hayflick correct in his contention that injunctive relief is available for violation of any of the

Act's provisions, the detailed remedial scheme adopted by Congress would make little sense. We think it unlikely that Congress would have gone to the trouble of authorizing equitable relief for two forms of agency misconduct and monetary relief for all other forms if it had intended to make injunctions available across the board.

■ While it is true that equitable jurisdiction conferred by statute "is not to be denied or limited in the absence of a clear and valid legislative command," *Porter v. Warner Co.*, 1946, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 a statute may "in so many words or by a necessary and inescapable inference" restrict the availability of injunctive relief. *Id.* at 398, 66 S.Ct. at 1089. "Congress knows how to deprive a court of broad equitable power when it chooses to do so." *Renegotiation Board v. Bannercraft Co.*, 1974, 415 U.S. 1, 19, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123. It appears from the face of the statute that injunctive relief to prevent a violation of subsection (b) is like the snakes in Ireland, because the Act makes no provision for it as part of the remedies that it does provide.

B. *The Legislative History.*

Our examination of the legislative history of the Privacy Act confirms our view that Congress did not intend to authorize the issuance of injunctions prohibiting the disclosure of protected materials. S. 3418, the original version of the Act passed by the Senate, granted broad equitable jurisdiction to the district courts, much like that conferred by the statute involved in *Porter v. Warner Co., supra.* It provided:

> The Attorney General of the United States, . . . or any aggrieved person, may bring an action in the appropriate United States district court against any person who has engaged, is engaged, or is about to engage in any acts or practices in violation of the provisions of this Act . . . to enjoin such acts or practices.

S. 3418, at § 304(a).

In contrast, H.R. 16373, the House version of the Act, authorized the district courts to enjoin agencies from wrongfully withholding records, as in subsection (g)(1)(B) and (3) of the Act, *supra,* but provided only monetary relief for other forms of agency misconduct, as in subsections (g)(1)(C) and (D) and (4) of the Act, *supra.*

Ordinarily, the differences between the two bills would have been resolved by a conference committee. However, "the lateness of the session and the pressures on Members of both bodies due to other pressing legislative business" dictated use of a more expedient procedure. Remarks of Congressman Moorhead, reprinted from the *Congressional Record* in Committee on Government Operations, United States Senate and Committee on Government Operations, House of Representatives, Legislative History of the Privacy Act of 1974, 94th Cong., 2d Sess. 985–86 (Joint Comm.Print 1976) (*"Legislative History "*). Accordingly, members of the House and Senate Government Operations Committees met informally and hammered out the compromise bill ultimately enacted into law as the Privacy Act of 1974. (*Legislative History* at 873, remarks of Senator Percy.)

The two houses adopted, in large measure, the civil remedies section contained in the original House bill. They modified the House bill in one significant respect, however, adding a right to injunctive relief for an agency's wrongful refusal to correct an individual's records. (See subsections (g)(1)(A) and (2), *supra.*) This course of action suggests that Congress deliberately opted for the limited right to injunctive relief provided by the House Bill.[1] In

---

1. During the debates over the proposed compromises, Senator Ervin placed a document entitled "Analysis of House and Senate Compromise Amendments to the Federal Privacy Act" in the *Congressional Record.* The analysis spells out the intent of the House and Senate legislation and explains the nature of the compromises effected. The House bill, it notes, would have permitted an individual to seek an injunction "only to produce his record upon a failure of an agency to comply with his request." Under the Senate bill, by contrast, "injunctive relief would be available to an individual to enforce any right granted to him."

amending the House bill Congress chose to add an agency's wrongful refusal to amend an individual's record to the list of violations for which injunctive relief is available. However, it did not add wrongful disclosure of protected materials to that brief list. The addition of a right to injunctive relief for one type of violation, coupled with the failure to provide injunctive relief for another type of violation, suggests that Congress knew what it was about and intended the remedies specified in the Act to be exclusive.

While the right to damages might seem an inadequate safeguard against unwarranted disclosures of agency records, we think it plain that Congress limited injunctive relief to the situations described in 5 U.S.C. § 552a(g)(1)(A) and (2) and (1)(B) and (3).

> Congress for reasons of its own decided upon the method for the protection of the "right" which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end. . . [I]t is for Congress to determine how the rights which it creates shall be enforced. . . . In such a case the specification of one remedy normally excludes another. *Switchmen's Union v. National Mediation Board, supra,* 320 U.S. at 301, 64 S.Ct. at 97 (citations omitted). *See also Santa Clara Pueblo v. Martinez,* 1978, ___ U.S. ___ at ___ , 98 S.Ct. 1670, at 56 L.Ed.2d 106.

None of the decisions on which Hayflick relies involves a statute comparable to the one before us. In some, the statute, while obviously creating a right, said nothing about a remedy, and the court implied one. *Jones v. Mayer Co.,* 1968, 392 U.S. 409, 414 n. 13, 88 S.Ct. 2186, 20 L.Ed.2d 1189, construing 42 U.S.C. § 1982; *Sullivan v. Little Hunting Park, Inc.,* 1969, 396 U.S. 229, 238, 90 S.Ct. 400, 24 L.Ed.2d 386, construing 42 U.S.C. § 1982; *Bell v. Hood,* 1946, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939, construing the Fourth and Fifth Amendments and 28 U.S.C. § 41(1).

The so called reverse Freedom of Information Act (FOIA) cases are of this type. They deal with the exceptions to FOIA set out in subsection (b) of FOIA, 5 U.S.C. § 552 as amended. That subsection simply provides: "This section does not apply to matters that are—" and then lists 9 categories of matters. Section 552 does not expressly prohibit disclosure of any such matters; it merely provides that FOIA does not apply to them. Under these circumstances, we have great difficulty in accepting the notion that FOIA can be the basis for granting an injunction against disclosure of excepted matters when an agency elects to disclose them, especially when subsection (c) provides:

> (c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress.

Nevertheless, courts have held that FOIA is a basis for issuing an injunction against disclosure of excepted matters. *See, e. g., Planning Research Corp. v. Federal Power Commission,* 1977, 181 U.S.App.D.C. 33, 39–40, 555 F.2d 970, 976–77; *Sears, Roebuck & Co. v. General Services Administration,* 1977, 180 U.S.App.D.C. 202, 204–205, 553 F.2d 1378, 1380–81; *Westinghouse Electric Corp. v. Schlesinger,* 4 Cir., 1976, 542 F.2d 1190, 1210–13; *but see Sears, Roebuck and Co. v. Eckerd, et al.,* 7 Cir., 1978, 575 F.2d 1197, 1202–03. The right to an injunction is implied; the Act nowhere provides for any remedy against disclosure. This is a far cry from the Privacy Act which, as we have seen, contains detailed prohibitions and detailed remedies, but omits the equitable remedy against disclosure which was contained in the Senate version of the bill.

In some cases the statute involved conferred equitable powers in broad terms, and the court construed the language broadly.

---

The final bill represents a compromise between the two positions, expanding the House bill to permit an individual "to seek injunctive relief to correct or amend a record maintained by an

agency." *Legislative History* at 861–62. A similar analysis was placed in the *Record* by Congressman Moorhead during House consideration. *Legislative History* at 987, 989–90.

*Mitchell v. Robert De Mario Jewelry*, 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323, construing 29 U.S.C. § 217; *Reich v. Webb*, 9 Cir., 1964, 336 F.2d 153, 158, construing 12 U.S.C. § 1464(d)(1); *Los Angeles Tr. D. & Mtge. Exch. v. Securities and Exch. Comm.*, 9 Cir., 1960, 285 F.2d 162, 181–82, construing the Securities Act of 1933, 15 U.S.C. § 77v(a) and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; *Culpepper v. Reynolds Metals Co.*, 5 Cir., 1970, 421 F.2d 888, 893–94, construing 42 U.S.C. § 2000e–5(g); *United States v. Republic Steel Corp.*, 1960, 362 U.S. 482, 491–92, 80 S.Ct. 884, 4 L.Ed.2d 903, construing 33 U.S.C. §§ 403, 405. Part III of the opinion in *Renegotiation Board v. Bannercraft Co.*, *supra*, 415 U.S. at 16–20, 94 S.Ct. 1028, appears to be dictum, in light of the holding in part IV, at pp. 20–26, 94 S.Ct. 1028. Moreover, the statute there involved, 5 U.S.C. § 552(a)(3), is far less specific and detailed than the provisions of 5 U.S.C. § 552a(g). The case is another one in which the court gives a broad construction to equity powers expressly conferred by the statute.

In some cases the statute provided for damages but said nothing about equitable relief. The court granted such relief, finding it necessary to make the Act effective. *Bateman v. Ford Motor Co.*, 3 Cir., 1962, 302 F.2d 63, 66, construing 15 U.S.C. §§ 1221–1225; *Semmes Motors, Inc. v. Ford Motor Co.*, 2 Cir., 1970, 429 F.2d 1197, 1206, similar (dictum); *Action v. Gannon*, 8 Cir., 1971, 450 F.2d 1227, 1237–38, construing 42 U.S.C. § 1985(3). The Privacy Act is not such a statute. It provides for some equitable relief, but not in this type of case.

One case is not remotely in point, and is cited only for a bit of obiter dictum that appellants' counsel seems to like. *Stringer v. United States*, 5 Cir., 1973, 471 F.2d 381.

C. *Conclusion.*

■ We conclude that the district court was not authorized under the Privacy Act to enjoin disclosure of the Cell and Mycoplasma Reports and correctly so held. In light of our decision, we need not consider the government's arguments that the re-

ports do not fall within the coverage of the Privacy Act and that the district court did not abuse its discretion in concluding that the public interest in dissemination of the reports outweighed Hayflick's interest in preventing their disclosure.

As to the appellant Hayflick, the order is affirmed. As to the appellant Cell Associates, Inc., we remand to the district court with directions to dismiss the action as to Cell Associates, Inc.