Fred D. LEWIS, et al., Plaintiffs,

v.

Ronald REAGAN, et al., Defendants.

Civ. A. No. 81–0130.

United States District Court,
District of Columbia.

June 9, 1981.

Fred D. Lewis and Lossie Mae Lewis, pro se.

Robert L. Gordon, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is a suit for declaratory and injunctive relief against the President of the United States, the Secretary of the Treasury, the Treasurer of the United States, and the United States Department of the Treasury. The plaintiffs are two individuals who own part of a one-eighth royalty interest in an oil well in Claiborne Parish, Louisiana. The income from this royalty interest has been taxed under the Windfall Profit Tax on Domestic Crude Oil [hereinafter "WPT"]. I.R.C. §§ 4986–4998. Alleging that the application of the WPT to their royalty interest deprives them of property without due process of law, the plaintiffs seek a permanent injunction against enforcement of the tax and restitution of amounts already withheld from them under the WPT. The case is before the Court on the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction

and for failure to state a claim upon which relief may be given.[1]

BACKGROUND

The WPT is an excise tax paid by producers of crude oil on the "windfall profit"[2] that resulted when President Carter decided to implement phased decontrol of domestic crude oil in April 1979. *See* I.R.C. § 4986. The provisions of the tax are extremely complex, in part because they incorporate the rules promulgated by the Department of Energy under price controls[3] and in part because they were originally tied to the gradual decontrol of crude oil prices.[4] *See generally Burke & Bowhay, Income Taxation of Natural Resources* 3102–3110 (1981).

Basically the "windfall profit" is calculated by taking the "removal price"[5] of a barrel of crude oil and subtracting from it the "adjusted base price" of that barrel of oil and any state severance taxes that qualify under section 4996(c). *See* I.R.C. § 4988(a). However, the total amount of the tax on a barrel may not exceed 90% of the net taxable income attributable to that barrel. *Id.* § 4988(b).

The tax must be paid by the "producer" of the oil, *id.* § 4986(b), who is defined as "the holder of the economic interest with respect to the crude oil." *Id.* § 4996(a)(1)(A). The tax rate generally ranges between 70% and 30%, *id.* § 4987(b)(1), although there is a special lower rate of between 50% and 30% for certain "independent producers" who qualify under section 4992. *Id.* § 4987(b)(2). There are also several categories of exempt oil. *Id.* § 4991(b).

The most complex part of the tax is the determination of the adjusted base price of the oil. The adjusted base price is calculated by taking a "base price" and adding an adjustment for inflation. Although the base price of a barrel of oil depends mainly on the "tier"[6] of the oil and the price for which the oil would have sold prior to decontrol, the tax provides for adjustments for grade, quality, and location. I.R.C. § 4989(d)(1).

Administration of the tax is also complicated. Most producers do not pay the tax directly to the government. Rather, the "first purchaser" of the oil withholds the tax from the amount due the producer. I.R.C. § 4995(a)(1)(A). The tax is calculated quarterly by the first purchaser, *id.* § 4995(a)(6), based on information supplied by the producer. *Id.* § 4995(a)(2). These calculations do not take into account the

---

1. The plaintiffs' motion to amend their complaint, being unopposed by the defendants, is granted. *See* Fed.R.Civ.P. 15; U.S.Dist.Ct.—D.C.R. 1–9(d). The discussion in this opinion deals with the complaint as amended.

2. *See* President's Message to Congress on Proposed Windfall Profit Tax, Weekly Comp. of Pres. Doc. 609 (Apr. 5, 1979). The issues in this case do not require more than a general overview of the WPT.

3. The WPT incorporates the classification of domestic crude oil into "tiers" from the price control regulations promulgated under the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751–760h (1980). *Compare* 10 C.F.R. §§ 212.73–.74 (1980) *with* I.R.C. § 4991. Moreover, the ceiling price under the crude oil price control regulations is the benchmark by which the "windfall" is calculated under the WPT. *See* I.R.C. § 4989(c)(1).

4. Under phased decontrol, a certain percentage of the oil in each category or tier was allowed to move into the next highest priced category each month. *See* 10 C.F.R. §§ 212.72(c)(2),

212.76(a)(3)(i) (1980). This made computing the WPT very complicated. President Reagan mitigated this problem by completely decontrolling crude oil prices. Executive Order No. 12,287, 46 Fed.Reg. 9909 (1981).

5. The "removal price" is generally the selling price. *See* I.R.C. § 4988(c)(1).

6. The WPT classifies all crude oil as either exempt or in one of three tiers. Tier one is a catchall category that applies to all oil not exempt or relegated to tiers two or three. I.R.C. § 4991(c). Tier two oil includes stripper well oil and oil from a National Petroleum Reserve. *Id.* § 4991(d). Tier three oil includes "newly discovered oil," "heavy oil," and "incremental tertiary oil." *Id.* § 4991(e). The base price of tier one oil is its May 1979 upper tier ceiling under the price control regulations, less $.21. *Id.* § 4989(c). Tier two has a base price of $15.20, and tier three has a base price of $16.55. *Id.* § 4989(d). The base prices of tier two and tier three oil are subject to adjustments for grade, quality, and location. *Id.*

90% net income limitation, which is calculated on a yearly basis when the producer files his tax return. *Id.* § 4988(b)(2)(B). As a consequence of this bifurcated process, the potential exists for a large number of complex refund claims. However, this complex collection process, which applies to numerous small royalty holders, such as the plaintiffs in this case, does not apply to the large integrated oil companies. *Id.* § 4995(b).

The plaintiffs in this case admit that they hold an economic interest in the oil well but contend that the government does not constitutionally have the power to tax them as "producers" because they do not fit the definition of producers under the law of Louisiana, the state in which the well exists. Alternatively, they argue that imposition of the tax on them violates the fifth amendment because they have not received any "windfall" from ownership of the royalty interest.

It is unclear how much tax the plaintiffs have paid. Lossie Mae Lewis holds .003563 of the one-eighth royalty, and Fred Lewis holds .005349 of the same royalty. A check from the well operator shows a deduction of $6.17 for WPT from a gross royalty payment of $20.06 for production during November 1980. The plaintiffs claim that the amount generally deducted is approximately 30%, which, if true, would put them in the lowest taxable category under the WPT.

The question presented to the Court is whether this suit is barred by the Anti-Injunction Act, I.R.C. § 7421(a), despite the plaintiffs' amendment of their complaint to allege jurisdiction under 28 U.S.C. §§ 1361, 1651, 2201, and 2202.

DISCUSSION

A. *The Anti-Injunction Act.*

The Anti-Injunction Act, I.R.C. § 7421(a), prohibits any "suit for the purpose of restraining the assessment or collection of any tax ... in any court by any person...." The Supreme Court tends to give section 7421(a) "almost literal effect." *Bob Jones University v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). As the Court noted in *Bob Jones University,* the statute's language "could scarcely be more explicit." *Id.* at 736, 94 S.Ct. at 2045. The principal purposes of the statute are to protect the government's need for expeditious tax collection and to require that disputes over amounts due be determined in a suit for a refund. *Id.; Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

The Supreme Court, despite its generally strict application of the Anti-Injunction Act, has allowed a limited exception to the ban if both parts of a stringent two-pronged test are met: (1) equity jurisdiction otherwise exists; (2) under no circumstances could the government prevail. *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129; *see Bob Jones University,* 416 U.S. at 745, 94 S.Ct. at 2050.

1. *Equity Jurisdiction Does Not Exist in This Case.*

The first prong of the test requires the plaintiff to show both that it would suffer irreparable harm if the injunction were not issued and that no other remedy is available to it. *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129. In the present case, the plaintiffs have not clearly alleged irreparable injury. Indeed, they do seem to have lost 30% of their royalty payment, but in *Enochs* the plaintiff alleged that his business would be destroyed if an injunction did not issue, an allegation that the Supreme Court found insufficient to prevent application of the Anti-Injunction Act. *Id.* at 4–6, 82 S.Ct. at 1127–28. Moreover, the plaintiffs in this case do have an alternative source of relief. They can go through the administrative refund process, and if they do not get the relief they seek, they may then sue. I.R.C. § 7422. In most cases such a suit adequately protects the taxpayer's interest. *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 9 (D.C. Cir. 1979), *cert. denied,* 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). The Supreme Court has indicated that the alternative procedures for review through the administrative

proceedings and refund suits are adequate to support application of the Anti-Injunction Act. *See Bob Jones University,* 416 U.S. at 746–47, 94 S.Ct. at 2050–51. Thus, the plaintiffs in this case cannot establish the Court's equitable jurisdiction.

### 2. *The Government is Likely to Prevail on the Merits.*

■ Even if the plaintiffs could establish the Court's equitable jurisdiction, they have not met the second prong of the exception to the Anti-Injunction Act. In *Enochs* the Court formulated this second test by saying that an injunction could be granted only if "under the most liberal view of the law and the facts, the United States cannot establish its claim." 370 U.S. at 7, 82 S.Ct. at 1129. In this case the plaintiffs claim that the WPT cannot be assessed against them because they are not classed as "producers" under state law. Although the WPT is to be paid by the producers of the oil, Congress, by defining "producers" as the holders of the economic interest in the oil, has, in effect, made "economic interest" the touchstone of the WPT. *See* I.R.C. § 4996(a)(1)(A).

The concept of economic interest has a specialized meaning in and is a fundamental part of the federal taxation of natural resources. The tax regulations define economic interest as existing in "every case in which the taxpayer has acquired by investment any interest in mineral in place . . . and secures, by any form of legal relationship, income derived from the extraction of the mineral . . . to which he must look for a return of his capital." Treas.Reg. § 1.611–1(b)(1) (1980). Only the owner of an economic interest is taxed on the income from a mineral property and takes depletion on the mineral as it is extracted. Moreover, the concept also determines whether a transaction involving a mineral property is a sale or a lease, that is, whether the in-

come from that transaction is ordinary or capital gain. *See Burke & Bowhay, supra,* at 208. Thus, when Congress made holders of economic interests in domestic crude oil subject to the WPT, it merely followed its usual practice in taxing natural resources.

■ The plaintiffs admit that as the owners of a royalty interest in an oil well they are holders of an economic interest. They contend, however, that Congress could not constitutionally impose the WPT on them because under Louisiana law they are not "producers" of crude oil. This argument is not convincing. The Supreme Court in early cases on natural resources law dealt with the question whether local law applies to the concept of economic interest. The Court looked to the relevant federal statute for an indication of whether the state law was to apply. If the statute did not indicate a reliance on state law, state law was irrelevant. *See Palmer v. Bender,* 287 U.S. 551, 555–56, 53 S.Ct. 225, 226, 77 L.Ed. 489 (1933); *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932); *Costantino v. Commissioner of Internal Revenue,* 445 F.2d 405, 408 (3d Cir. 1971); *cf. Swank v. United States,* 602 F.2d 348, 353 (Ct.Cl.1979) (economic interest exists independent of legal title), *cert. granted,* 446 U.S. 934, 100 S.Ct. 2150, 64 L.Ed.2d 786 (1980). These cases indicate that "[s]tate law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." *Burnet v. Harmel,* 287 U.S. at 110, 53 S.Ct. at 77.[7] Consequently, the plaintiffs' reliance on state law is unfounded, and the government has more than a fair chance of demonstrating that Congress had the power to impose a tax on "producers" as the holders of economic interests in the property.

■ The plaintiffs' second argument seems to be that they have not received a

---

7. The WPT does not indicate, directly or by implication, that state law is to apply to the definitions of "producer" or "economic interest." Moreover, the Supreme Court has specifically rejected the argument, raised by the plaintiffs, that a taxpayer is freed from the tax

consequences of an oil lease merely because state law says that no one owns the oil until it has been extracted from the ground. *Palmer v. Bender,* 287 U.S. at 557, 53 S.Ct. at 226; *United States v. Biwabik Mining Co.,* 247 U.S. 116, 123, 38 S.Ct. 462, 464, 62 L.Ed. 1017 (1918).

"windfall" and that to tax their royalties as if they had received a windfall deprives them of property without due process of law in violation of the fifth amendment. In *Magnano v. Hamilton*, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934), the Supreme Court held that only in certain rare circumstances is the due process clause of the fifth amendment a limitation on the taxing power of Congress. *Id.* at 44, 54 S.Ct. at 601; *accord, Pittsburgh v. Alco Parking Corp.*, 417 U.S. 369, 373–74, 94 S.Ct. 2291, 2294, 41 L.Ed.2d 132 (1974); *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537, 542 (10th Cir.), *cert. granted,* —— U.S. ——, 101 S.Ct. 71, 66 L.Ed.2d 121 (1980). A taxing statute will be struck down only if it is so arbitrary as to constitute, in effect, the direct exertion of a different and forbidden power, such as the confiscation of property. *Magnano*, 292 U.S. at 44, 54 S.Ct. at 601; *Merrion*, 617 F.2d at 542. A tax is not considered confiscatory even if its consequences are so harsh that it restricts or destroys particular occupations or businesses. *Magnano*, 292 U.S. at 44, 54 S.Ct. at 601; *Alco Parking Corp.*, 417 U.S. at 374, 94 S.Ct. at 2294.[8] Because the power of Congress to tax is so broad, any plaintiffs are unlikely to prevail on a fifth amendment argument.

■ In this case the tax does not seem to disguise a forbidden purpose. The WPT taxes the increased income that will accrue to the owners of domestic oil properties after the lifting of price controls. Under the terms of the lease of the plaintiffs' well, they are entitled to a share of one-eighth of the net income from the well. Complaint, Exhibit B, ¶ 3. Thus, if income from the well increases because of the decontrol of oil prices, the plaintiffs will share in the increase, even if only in a small way. Therefore, the application of the WPT to the plaintiffs seems justified, especially in view of Congress' broad power to tax.

This case does not satisfy either prong of the test set out in *Enochs* and *Bob Jones University*. As a result, the Anti-Injunction Act bars the plaintiffs' suit.

### B. *Plaintiffs' Alternative Grounds for Jurisdiction.*

In their amended complaint the plaintiffs allege jurisdiction under 28 U.S.C. §§ 1361, 1651, 2201 and 2202. These provisions do not allow the plaintiffs to circumvent the ban of the Anti-Injunction Act.

#### 1. *Sections 2201 and 2202.*

■ Section 2201 provides: "In the case of actual controversy within its jurisdiction, *except with respect to taxes*, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration …." 28 U.S.C. § 2201 (1976) (emphasis added). Section 2202 states that "further necessary or proper relief based upon a declaratory judgment" may be granted by a court. *Id.* § 2202. Relief under section 2202 thus depends on the court having jurisdiction under 2201. Yet section 2201 on its face does not apply to tax suits. The courts have repeatedly emphasized that the prohibition against declaratory judgments on tax matters is at least as broad in its prohibitive scope as the Anti-Injunction Act. *See, e. g., Bob Jones University, supra*, 416 U.S. 732–33 n.7, 94 S.Ct. 2044 n.7; *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976); *Application of J. W. Schonfeld, Ltd.*, 460 F.Supp. 332, 338 (E.D.Va.1978). Thus, sections 2201 and 2202, rather than providing jurisdiction, actually bar jurisdiction. *See Investment Annuity, Inc. v. Blumenthal, supra*, 609 F.2d at 6; *Mitchell v. Riddell*, 402 F.2d 842, 846 (9th Cir. 1968), *cert. denied*, 394 U.S. 456, 89 S.Ct. 1223, 22 L.Ed.2d 415 (1969).

#### 2. *Section 1651.*

■ Section 1651 provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in

---

**8.** Although the exact extent of the injury in the present case is unclear, it seems that the plaintiffs' royalties were reduced by 30%. This is far less "confiscatory" than the alleged effect of the tax in *Magnano*.

**554**

aid of their respective jurisdictions . . . ." 28 U.S.C. § 1651 (1976). This section does not provide an independent jurisdictional base for a cause of action. *See, e. g., Brittingham v. Commissioner of Internal Revenue*, 451 F.2d 315, 317 (4th Cir. 1971); *Benson v. Board of Parole & Probation*, 384 F.2d 238, 239 (9th Cir. 1967), *cert. denied*, 391 U.S. 954, 88 S.Ct. 1860, 20 L.Ed.2d 869 (1968); *Dexter v. United States*, 424 F.Supp. 1069, 1071 (Cust.Ct.1977). Therefore, unless some other basis of jurisdiction may be found, section 1651 is of no help to the plaintiffs' case.

3. *Section 1361.*

Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed the plaintiff." However, the drastic remedy of mandamus is to be invoked only in extraordinary situations. *Allied Chemical Corp. v. Daiflon, Inc.,* — U.S. —, —, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). As a result, courts usually condition the grant of mandamus on several circumstances, including whether the plaintiff has any alternative means of getting relief. *Allied Chemical Corp.*, 101 S.Ct. at 191; *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *Cartier v. Secretary of State*, 506 F.2d 191, 199 (D.C. Cir. 1974), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). In this case the plaintiffs have another route by which to seek relief. As discussed above, they can carry the administrative refund process to its conclusion and can then sue for a refund if they have been unsuccessful at the administrative level. Therefore, relief in the form of a writ of mandamus is inappropriate.

CONCLUSION

The circumstances of this case do not conform to the narrow exception to the Anti-Injunction Act, and the new grounds of jurisdiction alleged by the plaintiffs in their amended complaint either do not permit tax suits (§§ 2201 and 2202) or are inappropriate in the present case (§§ 1361, 1651). Moreover, the plaintiffs do have an alternative forum in which to seek relief. Therefore, the defendants' motion to dismiss is granted.