Ava P. TRAHAN, et al., Plaintiffs,

v.

Donald T. REGAN, Secretary of the Treasury, et al., Defendants.

Civ. A. No. 82–3004.

United States District Court, District of Columbia.

Nov. 16, 1982.

As Amended Dec. 21, 1982.

Bruce M. Fried, Washington, D.C., for plaintiffs.

Mitchell Berger, Asst. U.S. Atty., Washington, D.C., for defendants; J. Brian Ferrel, Tax Div., Dept. of Justice, Washington, D.C., of counsel.

MEMORANDUM

GASCH, District Judge.

Now pending before the Court is defendants' motion to dismiss this action seeking to prevent the Internal Revenue Service ("IRS") from releasing the tax return information of plaintiffs and others similarly situated to the Social Security Administration ("SSA"). For the reasons stated hereinafter, the Court concludes that under the circumstances of this case, plaintiffs' action must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (FRCP).

BACKGROUND

On February 4, 1981, the General Accounting Office ("GAO") reported to Congress that:

> More than $100 million was overpaid for each fiscal year 1977, 1978 and 1979 to Supplemental Security Income ("SSI") recipients who owned assets valued in excess of what is allowed under the program. These overpayments, estimated at $125 million during fiscal year 1979, primarily concerned the value and ownership of bank accounts and real property other than the recipients' home ... [t]he Internal Revenue Service has information that would provide SSA a more effective method for identifying bank account ownership and help reduce the overpayments.

Report of the Comptroller General to the United States Congress of February 4, 1981, HRD 81–4 p. i. (hereinafter "1981 GAO Report"). GAO further recommended that:

> ... [t]he Secretary should require the Commissioner of Social Security to
>
> —initiate steps to have SSI applicants and recipients sign tax information consent forms and provide these forms to IRS for purposes of obtaining information needed to verify SSI income and resource records.

1981 GAO Report at ii. In January 1981, GAO reiterated its concern to Congress regarding the obtention of such records. Report of the Comptroller General to the United States Congress of January 12, 1982,

HRD 82–9. In May 1982, the Department of Health and Human Services ("HHS") implemented the plan twice recommended by GAO by mailing more than four million notices to SSI recipients between May 19, 1982 and May 29, 1982. These notices apprised SSI recipients that HHS wanted to have IRS release:

> all tax information from any information return relating to your receipt of income other than wages for all tax years beginning January 1, 1980, and subsequent.

The notice further informed SSI recipients that:

> You have a choice about signing the [consent] form. But we must have accurate information about your income and what you own to pay your Supplemental Security Income checks. If you do not sign the form, your Supplemental Security Income checks may be affected.

Thereafter, on June 11, 1982, an action was filed in the United States District Court for the District of Columbia attempting to enjoin the Secretary of HHS from pursuing the information returns.[1] On July 6, 1982, Judge Gesell of this Court entered summary judgment for the Secretary and dismissed the action for:

(1) lack of subject matter jurisdiction under the Social Security Act and the Privacy Act;

(2) lack of merit of constitutional claims of denial of due process; and

(3) lack of a claim under the Administrative Procedures Act.

*See, Tierney, et al. v. Schweiker,* Civil Action No. 82–1638 (D.D.C. July 6, 1982).[2]

Following this dismissal, HHS conveyed to IRS many of the consents to disclosure that plaintiffs and other SSI recipients had executed. Affidavit of M. Eddie Hieronimus, ¶ 2. To date the IRS has not disclosed any of the requested information in response to those requests. *Id.* at ¶ 3. The instant action was filed on October 21, 1982, at which time plaintiffs moved for a temporary restraining order and expedited discovery. On October 29, 1982, after a hearing on the motions, the Court denied plaintiffs' motions and set a hearing on defendants' motion to dismiss for November 5, 1982.

## ANALYSIS

### A. *Rule 12(b)(6)*

Plaintiffs contend that, based upon alleged imminent violations of the confidentiality provisions of the Internal Revenue Code ("IRC"), they are entitled to: (1) injunctive relief preventing the IRS from disclosing the information sought, (2) declaratory relief holding the executed consent forms invalid, (3) relief in the nature of mandamus ordering the Commissioner of the IRS to perform his duty of maintaining the confidentiality of plaintiffs' tax returns and return information; and (4) where disclosure based upon the alleged invalid consent forms have been made by defendants, $1000 in damages per disclosure pursuant to 26 U.S.C. § 7217(c).

Because the question as to whether federal question jurisdiction exists in the instant case in turn depends upon whether plaintiffs have presented an actual and substantial controversy to the Court, and because it is the nature of the dispute in the instant case which dictates whether plaintiffs are entitled to the relief sought, the Court will first examine plaintiffs' claims in light of FRCP 12(b)(6).

### (1) *Plaintiffs' Claims for Injunctive Relief*

 Defendants base their motion to dismiss primarily upon the ancient maxim— *expressio unius est exclusio alterius.* As applied to the instant case, defendants contend that in assessing the need for, and right of, confidentiality with regard to tax returns and tax return information, Congress provided only criminal penalties and civil damages thereby implicitly precluding the power of the court to award injunctive

---

1. The plaintiffs in that action included the five named plaintiffs in the instant case.

2. This decision is now before the United States Court of Appeals for the District of Columbia Circuit.

relief. This contention, the Court feels, has merit for "[w]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Cell Associates, Inc. v. National Institutes of Health, et al.,* 579 F.2d 1155 (9th Cir.1978), quoting *National Railroad Passenger Corporation v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 *reh. denied,* 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974).

 Plaintiffs, citing *Porter v. Warner Holding Company,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), contend in this regard that "the comprehensiveness of [the court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command." *Id.* at 398, 66 S.Ct. at 1089. Plaintiffs, however, have misconstrued the meaning of the holding in *Porter, supra,* for in that case the legislative history of the statute under which the plaintiff was proceeding indicated Congressional intent to authorize the court to issue whatever "other order" may be necessary in addition to authorizing civil damages recoverable by aggrieved persons. In contrast, in the instant case, the legislative history of 26 U.S.C. §§ 7213, 7217 [providing criminal and civil penalties for willful unauthorized disclosures] indicates that Congress objectively assessed the need for confidentiality of returns, created a right to such confidentiality in the taxpayer and then provided what it considered to be adequate remedies for violations of that right. There are no indications in the legislative history of 26 U.S.C. § 7217 that Congress intended to provide any remedies other than those which it plainly and expressly provided therein. In addition, in cases such as this one, where Congress has spoken plainly and where plaintiffs seek to interfere with, and if allowed, enjoin an administrator from making a discretionary judgment pursuant to lawfully delegated authority, courts

should be hesitant to lightly infer a right to injunctive relief. Indeed, prior to 1976, at which time Congress amended 26 U.S.C. § 6103, only a criminal penalty was provided for violations of the confidentiality provisions of the IRC. In strengthening and elaborating upon the protection of the confidentiality of tax returns and return information, the committee overhauling section 6103 stated that:

> the present provisions designed to enforce the rules against the improper use or disclosure of returns and return information are inadequate. The committee decided that the criminal penalties for an authorized [sic] disclosure should be increased and that the situations to which they apply should be broadened to cover all situations in which returns and return information are treated as confidential.... The committee also decided that, in order to redress any injury sustained and *to aid in the enforcement of the confidentiality rules,* a civil action for damages should be provided to any person injured by a willful or negligent disclosure in violation of the amendment.

S.Rep. 94–938 at 347 ([1976] 4 U.S.Code Cong. & Ad.News at 2897, 3777 (emphasis added). Moreover, in contrast to its decision not to provide injunctive relief for violations of section 6103 in the Tax Reform Act of 1976, Congress *did* provide for injunctive relief for unauthorized disclosures of "written determinations." 26 U.S.C. § 6110(f)(3). This fact makes the instant case very similar to *Parks v. United States Internal Revenue Service,* 618 F.2d 677 (10th Cir.1980), wherein the court, in refusing to grant injunctive relief under the Privacy Act, stated that:

> [a] relevant principle of [statutory] construction is that where, as here, the statute provides for special types of equitable relief but not for others it is not proper to imply a broad right to injunctive relief.

*Id.* at 684. The Court believes that a similar conclusion is warranted in the instant case [3] as the well known availability of a

---

**3.** Indeed, it was the *Cell Associates, supra* and *Parks, supra,* line of cases, among other consid-

erations, which led the court to dismiss plain-

civil remedy for violations of section 6103 creates a heavy *in terrorem* bar against prospective violations and therefore serves the purposes of an injunction. *See Exxon Corporation v. Federal Trade Commission,* 589 F.2d 582, 591 (D.C.Cir.1978), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979).

■ Finally, aside from whether the power of the Court to grant injunctive relief is or is not precluded in the instant case, plaintiffs are not entitled to such relief because (1) they have an adequate remedy at law pursuant to 26 U.S.C. § 7217; and (2) they do not face irreparable injury. To this plaintiffs assert that the loss of their right to confidentiality constitutes irreparable harm and that the civil damages remedy provided by section 7217 is inadequate to redress that harm. The simple answer to these contentions is that, while there is no doubt that plaintiffs believe that an alleged violation of their right to confidentiality is not adequately redressed through 26 U.S.C. § 7217, Congress obviously believed to the contrary. Moreover, a second reason that plaintiffs' alleged injury is not irreparable is that, given the fact that no disclosures have yet been made, plaintiffs may still write to the IRS or to the SSA and revoke their previously executed consents to disclosure. This plaintiffs have failed to do allegedly, as plaintiffs' counsel stated, because "[i]t is unreasonable to expect that this group . . . would be sufficiently sophisticated to take the necessary efforts to revoke their 'consents' . . . ." The Court is unwilling to accept this contention inasmuch as plaintiffs certainly were "sufficiently sophisticated to make the necessary efforts" to apply for SSI benefits in the first place.

Therefore, because the legislative history and the plain language of 26 U.S.C. §§ 6103, 7217 preclude the grant of injunctive relief, because plaintiffs do not face irreparable harm, because plaintiffs have an adequate remedy at law should such violations take place, and primarily because plaintiffs could, without judicial intervention, prevent the alleged unauthorized disclosures from taking place, the Court is without power to grant the injunctive relief sought in the instant case.

### (2) *Mandamus*

Plaintiffs next contend that the Court may exercise jurisdiction under 28 U.S.C. § 1361 to grant a writ of mandamus ordering the Secretary of the Treasury and the Commissioner of the IRS to protect the confidentiality of plaintiffs' tax returns and return information pursuant to 26 U.S.C. § 6103. Title 28 U.S.C. § 1361 provides:

> The District Court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employer of the United States or an agency thereof to perform a duty owed to plaintiff.

■ Initially it appears that jurisdiction under this provision exists in the instant case. However, upon closer examination the Court notes that plaintiffs have not met the three traditional requirements for the exercise of mandamus jurisdiction which are:

(1) the existence of a clear statutory right to the plaintiffs;

(2) the absence of discretion on the part of the government official charged with the correlative duty; and

(3) the inadequacy of any other remedy.

*See Cockrum v. Califano,* 475 F.Supp. 1222, 1230 (D.D.C.1979), *remanded sub nom., Cockrum v. Harris,* 634 F.2d 1358 (D.C.Cir. 1980). Specifically, plaintiffs have failed to demonstrate either that the civil damages remedy provided by 26 U.S.C. § 7217 is inadequate or that the Secretary of the Treasury lacks discretion to withhold or not to withhold tax returns or return information. Indeed, it has been held that "[section 6103] accords the Secretary discretion to withhold the information . . . ." *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *accord, Zale Corp. v. U.S. Internal Revenue Service,* 481 F.Supp. 486 (D.D.C.1979). Further, plaintiffs have other adequate remedies both in the fact that they could revoke their consents and

tiffs' action in *Tierney, et al. v. Schweiker,* Civil Action No. 82–1638 (D.D.C. July 6, 1982).

that, notwithstanding such revocations, plaintiffs may sue for damages for any unauthorized disclosure which may take place.

Finally, with regard to the exercise of mandamus jurisdiction in the instant case, the Court finds the language of *Haneke v. Secretary of Health, Education and Welfare,* 535 F.2d 1291 (D.C.Cir.1976), to be both instructive and pertinent:

(1) The writ should be used only when the duty to act is clearly established and plainly defined and the obligation to act is peremptory. (2) The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action. (3) Courts have no general supervisory powers over the executive branches or their officers which may be invoked by writ of mandamus. Interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief. (4) When the performance of official duty requires an interpretation of the law that governs that performance, the interpretation placed by the officer upon the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious. (5) For it is only in clear cases of illegality of action that courts will intervene to displace the judgments of administrative officers or bodies. (6) Generally speaking, when an administrative remedy is available, it must first be exhausted before judicial relief can be obtained, by writ of mandamus or otherwise.

*Id.* at 1296 n. 15; *accord, Lewis v. Reagan,* 516 F.Supp. 548, 554 (D.D.C.1981).

Therefore, because the authority of the Secretary of the Treasury to withhold or disclose tax returns and return information is discretionary in nature, because the exercise of that discretion involves an interpretation of the law by the Secretary, and because plaintiffs have an adequate remedy aside from issuance of the writ, the Court concludes that mandamus does not lie in the instant case.

(3) *Declaratory Relief*

Title 28 U.S.C. § 2201 provides that:
In a case of actual controversy within its jurisdiction, except with regard to federal taxes ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ....

After carefully examining the statutes involved and the allegations in plaintiffs' complaint, and after then applying the appropriate standards under 28 U.S.C. § 2201, the Court concludes that plaintiffs have failed to present an "actual controversy" to the Court.

■ In setting up the statutory and regulatory framework for the SSI program, Congress provided that the Secretary
shall require that eligibility for benefits will not be determined solely on the basis of declarations by the applicant concerning eligibility factors or other relevant facts, and that relevant information will be verified from independent or collateral sources and additional information obtained as necessary.

42 U.S.C. § 1383(e)(1)(B). Acting pursuant to the legislative directive to prescribe "requirements with respect to the filing of applications, the suspension or termination of assistance, *the furnishing of other data and material,* and the reporting of events and changes in circumstances," 42 U.S.C. § 1383(e)(1)(A) (emphasis added), the Secretary issued the following regulation informing SSI recipients that they:
must give us any information we request and show us necessary documents or other evidence to prove that you meet these [eligibility] requirements.

20 C.F.R. § 416.200 (1982).[4] Based upon the above-quoted language of 42 U.S.C. § 1383(e)(1)(A) and the regulation promulgated thereunder, plaintiffs' allegation that the disputed "consents" in the instant case were coerced must fail for it is clear that the Secretary may condition the grant of,

---

**4.** Interestingly, plaintiffs do not challenge the legality or application of this regulation.

and continuing right to receive, SSI benefits upon the furnishing of information which the Secretary deems relevant; here, the tax returns and return information of SSI recipients. It is with this consideration in mind that the Court concludes that the grant of a declaratory judgment is precluded by the lack of an actual controversy in the instant case. Further, as stated hereinbefore, an "actual controversy" within the meaning of 28 U.S.C. § 2201 is lacking in the instant case inasmuch as plaintiffs have failed to exhaust their administrative remedies (i.e., they can still revoke their consents). In short, the Court concludes that the Secretary of HHS did not coerce plaintiffs into signing the consent forms, but merely legally conditioned continued eligibility for benefits upon the release of relevant information.

*(4) Damages Under 26 U.S.C. § 7217*

█ As stated in the affidavit of M. Eddie Hieronimus at ¶ 3, no disclosures of tax returns or return information, authorized or otherwise, have been made pursuant to the disputed "consent" forms. Therefore any claims asserted by plaintiffs pursuant to 26 U.S.C. § 7217 are premature as the subject matter jurisdiction of the Court to entertain the action and the attendant power to award civil damages can be exercised only after a violation has been demonstrated.

B. *Rule 12(b)(1)*

█ With regard to FRCP 12(b)(1), the Court concludes that, under the circumstances of the instant case, subject matter jurisdiction is lacking. The only remaining possible basis of jurisdiction over the instant case is federal question jurisdiction pursuant to 28 U.S.C. § 1331(a). In general, it is well recognized that in order for a federal court to exercise federal question jurisdiction, a substantial nonfrivolous federal claim must arise in the context of an actual controversy. *Payne v. Government of the District of Columbia,* 559 F.2d 809, 818 (D.C.Cir.1977); *Standage Ventures, Inc. v. State of Arizona,* 499 F.2d 248, 249 (9th Cir.1974).

As hereinbefore stated, plaintiffs have not presented an actual controversy to the Court, and based upon an analysis of the statutory and regulatory framework of the SSI program coupled with the facts of the instant case, the Court concludes that plaintiffs' claims are both insubstantial and frivolous.

CONCLUSION

In summary, then, plaintiffs' suit must be dismissed pursuant to FRCP 12(b)(6) because:

(1) injunctive relief is not warranted;

(2) declaratory relief is not warranted;

(3) plaintiffs' action for damages under 26 U.S.C. § 7217 is premature; and

(4) mandamus will not lie.

Further, aside from FRCP 12(b)(6), plaintiffs' suit, having failed to present a substantial federal question which arises in the context of an actual controversy, must be dismissed pursuant to FRCP 12(b)(1).